761 A.2d 1220 (2000)
In the Interest of R.A.
Appeal of Harrisburg School District.
Superior Court of Pennsylvania.
Argued May 23, 2000.
Filed October 27, 2000.
*1221 Royce L. Morris, Harrisburg, for appellant.
William M. Shreve, Harrisburg and Laval S. Miller-Wilson, Philadelphia, for R.A., participating party.
Eric R. Augustine, Asst. Dist. Atty., Harrisburg, for Com., participating party.
Thomas W. Scott and Michael J. O'Conner, Harrisburg, for Harrisburg Educ. Ass'n, participating party.
BEFORE: McEWEN, President Judge, LALLY-GREEN, and HESTER, JJ.
LALLY-GREEN, J.:
¶ 1 Appellant, the Harrisburg School District (District), appeals from the protective order issued by the juvenile court in this case on August 12, 1999. We vacate the order.
¶ 2 The complex procedural history of the case is as follows. The protective order arose out of an incident on May 21, 1999, where Henry Dengler, a teacher, was assaulted in school by nine-year-old student R.A. The Honorable Lawrence F. Clark, Jr. held a juvenile adjudication concerning R.A. on May 26, 1999. During that hearing, Judge Clark learned that the District had reprimanded Mr. Dengler for calling the police after a previous violent incident concerning R.A. on May 6, 1999. Specifically, the District reprimanded Mr. Dengler for calling the police directly, without first notifying school police.
¶ 3 This information came to the court's attention as follows. First, the court heard testimony from Mr. Dengler concerning the May 21 attack. The court found beyond a reasonable doubt that R.A. committed the attack intentionally, but the court did not complete the adjudication because juvenile authorities were not prepared to make a recommendation regarding his disposition. N.T., 5/26/99, at 24, 41. The court then took additional testimony from the victim so that we can gain a perspective of the totality of the circumstances. Id. at 24. The court did so because it was aware of the May 6 incident, but had not heard Mr. Dengler's testimony concerning that incident. Id. The court told Mr. Dengler that it's your absolute right as the victim of a crime to share with the Court not only your perceptions and understanding of the facts of the case, but any other collateral matters that may affect upon you personally, professionally or in any other way. Id. at 25. Mr. Dengler then discussed the May 6 incident and the District's reprimand, which was issued on May 10, 1999. Id. at 26-33. After being questioned by the court, Mr. Dengler testified that the reprimand would cause him to hesitate before calling the police, and that it has caused other teachers to hesitate. Id. at 35. He also testified that the school police are unresponsive to violent outbursts by students, and that he feels that he has been retaliated against for exercising his rights. Id. at 36-38. The District Attorney then asked that the court do what's appropriate, taking into account the effect that the incident has had on Mr. Dengler's career. Id. at 43.
¶ 4 At the end of the hearing, Judge Clark issued a protective order stating that no person shall take any adverse action of any kind against Mr. Dengler as a result of his notifying the police. Docket Entry 5; N.T., 5/26/99, at 44-47. Judge Clark denied reconsideration on May 27, 1999. Docket Entry 6.
¶ 5 On May 28, 1999, the District appealed to the Superior Court from Judge Clark's May 26, 1999 protective order. Docket Entry 9. It also filed an Emergency Application for Stay Pending Appeal or Supersedeas (the Stay Application) and filed an Emergency Application for Leave to Intervene for Purpose of Obtaining Party Status (the Intervention Application). Docket Entries 10-11. On the same day, May 28, 1999, the Superior Court extended the time for complying with the protective order to June 1, 1999, denied all other requests for relief in the Stay Application *1222 and referred the Intervention Application to the trial court for disposition. Docket Entry 12. On June 1, 1999, our Supreme Court granted the District's Stay Application pending the trial court's disposition of the Intervention Application. Docket Entry 13. On June 2, 1999, Judge Clark transferred the case to his colleague, Judge Kleinfelter. Docket Entry 14. On June 7, 1999, the Harrisburg Education Association (HEA)[1] filed an Intervention Application. Docket Entry 15. On June 10, 1999, Judge Kleinfelter granted both Intervention Applications for the limited purpose of holding an evidentiary hearing on August 11, 1999, regarding the merits of the underlying protective order. Docket Entry 16. In doing so, Judge Kleinfelter vacated Judge Clark's May 27 order denying reconsideration of the May 26 protective order. Id. Judge Kleinfelter also decreed that the protective order itself shall remain in effect. Id. On July 2, 1999, the City of Harrisburg petitioned to intervene. Docket Entry 19. Judge Kleinfelter granted this petition on July 27, 1999. Docket Entry 22.
¶ 6 The Honorable Joseph H. Kleinfelter scheduled an evidentiary hearing on the merits of the protective order on August 11, 1999. The HEA, the District, the City of Harrisburg, and the Commonwealth appeared at the hearing. After the hearing, Judge Kleinfelter held that the protective order should not only be reaffirmed, but should be expanded to protect all teachers and staff employed by the school district who find themselves as victims of crime. Transcript of Proceedings, 8/12/99, at 10. Judge Kleinfelter denied reconsideration on August 12, 1999. Docket Entry 25. This appeal by the District followed.
¶ 7 We will briefly summarize the positions of the parties. The District argues that: (1) the juvenile court lacked jurisdiction to issue the order; (2) the court abused its discretion by soliciting testimony regarding the reprimand during R.A.'s adjudication proceeding; (3) the court abused its discretion in issuing the protective order; and (4) the order impermissibly interferes with the Board of School Directors' lawful exercise of authority under the Public School Code of 1949. The Commonwealth argues that the court did have authority to issue the order, and that the court did not abuse its discretion. Similarly, the HEA has filed a Brief supporting the protective order.[2]
¶ 8 As noted above, the District raises four issues on appeal:
1. Whether the juvenile court lacks jurisdiction over the issuance of a protective order against the Harrisburg School District In the Interest of R.A., which involved a juvenile dependency matter and not a criminal matter.
2. Whether the Juvenile court abused its discretion in soliciting testimony from Henry Dengler following an adjudication hearing In the Interest of R.A., when there was no genuine issue properly before the juvenile court with respect to Mr. Dengler's need for a protective order.
3. Whether the trial court abused its discretion in affirming the juvenile court's issuance of a protective order on behalf of Henry Dengler.
4. Whether the protective order issued on May 26, 1999 and expanded on August 12, 1999 must be vacated because it interferes with the Harrisburg Board of School Directors' lawful exercise of their authority under the Public School Code of 1949.
*1223 District's Brief at 4. Because we agree with the District's first argument, we need not address its remaining claims.
¶ 9 It is undisputed that the protective order arose out of a juvenile adjudication concerning R.A. The District argues that the juvenile court lacks statutory authority to issue the protective order protecting all teachers and staff employed by the school district who find themselves as victims of crime. The court cited § 4954 of the Crimes Code, 18 Pa.C.S.A. § 4954, as authority for issuing the order. Trial Court Opinion, 5/26/99, at 8; Trial Court Opinion, 8/12/99, at 6.[3] Section 4954 reads as follows:
CHAPTER 49FALSIFICATION AND INTIMIDATION
Subchapter B. VICTIM AND WITNESS INTIMIDATION
§ 4954. Protective Orders
Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:
(1) An order that a defendant not violate any provision of this subchapter or section 2709 (relating to harassment and stalking).
(2) An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.
(3) An order that any person described in paragraph (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.
(4) An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may impose.
18 Pa.C.S.A. § 4954 (emphasis added). The District argues that § 4954 does not apply because R.A.'s juvenile adjudication is not a criminal matter. We agree.
¶ 10 Recently, in In the Interest of J.H., 737 A.2d 275 (Pa.Super.1999), this Court confirmed that juvenile proceedings are not criminal proceedings. In that case, the Court was faced with the issue of whether 42 Pa.C.S.A. § 5918 applies to juvenile proceedings. Stated broadly, § 5918 protects people who are charged with any crime from being required to answer any question at trial regarding prior crimes. In concluding that § 5918 does not apply, the J.H. Court noted fundamental differences between juvenile adjudications and criminal proceedings, as follows:
Juvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings. This Court recently examined the constitutional implications of the 1995 amendments in In the Interest of J.F., 714 A.2d 467 (Pa.Super.1998), appeal denied, [557 Pa. 647] 734 A.2d 395 (Pa.1998). There, the appellants contended the amendments transformed the nature and function of juvenile court into something akin to the adult criminal system, such that due process required juveniles be given a right to a jury. We observed the amendments reflect the *1224 changing nature of juvenile crime, as society has witnessed a progression in the number of violent offenses committed by juveniles. Id., at 471. Nevertheless, the policies underlying our juvenile system, while evolving, still emphasize rehabilitation and protection of our youth. Id. We declined to conclude a juvenile adjudication has become equivalent to an adult criminal proceeding and observed juvenile proceedings remain intimate, informal and protective in nature. Id.

Appellant claims nothing in § 5918 expressly limits its application to adult defendants or adult proceedings, but this simply is not true. Section 5918 applies to questions at trials of persons charged with any crime. 42 Pa.C.S. § 5918. Under the Juvenile Act, juveniles are not charged with crimes; they are charged with committing delinquent acts. They do not have a trial; they have an adjudicatory hearing. If the charges are substantiated, they are not convicted; they are adjudicated delinquent. See 42 Pa.C.S. §§ 6302, 6303, 6341, 6352. Indeed, the Juvenile Act expressly provides an adjudication under its provisions is not a conviction of crime. 42 Pa.C.S. § 6354(a); see, e.g., In the Interest of K.B., [432 Pa.Super. 586] 639 A.2d 798, 805 (Pa.Super.1994), appeal denied, 540 Pa. 613, 656 A.2d 118 (1995), overruled on other grounds by In the Interest of M.M., 547 Pa. 237, 690 A.2d 175 (Pa.1997) (By its very terms, upon a finding of delinquency, the juvenile is not `branded' with the stigma of a criminal conviction, but is simply `adjudged delinquent').
These are not insignificant differences or the transposing of synonyms. The entire juvenile system is different, with different purposes and different rules.
Id. at 278 (emphasis added, footnote omitted). See also 1 Pa.C.S.A. § 1991 (defining crime as any indictable offense); Commonwealth v. Mordan, 419 Pa.Super. 214, 615 A.2d 102, 106 n. 5 (1992) (defining criminal proceeding as some step taken before a court against some person or persons charged with some violation of the criminal laws), affirmed, 534 Pa. 390, 633 A.2d 588 (1993).[4]
¶ 11 We also note that under the Juvenile Act, cases involving juveniles can be transferred from juvenile court to criminal court, and vice-versa. See 42 Pa.C.S.A. § 6322(a) (if the court discovers during a criminal proceeding that the defendant is a minor, [the Juvenile Act] shall immediately become applicable, and the court shall forthwith halt further criminal proceedings and, where appropriate, transfer the case to ... the court assigned to conduct juvenile hearings); 42 Pa.C.S.A. § 6355 (authorizing transfer of a juvenile delinquency petition to the court assigned to conduct criminal proceedings, for prosecution of the offense under enumerated circumstances). These transfer provisions indicate that juvenile proceedings are distinct from criminal proceedings.
¶ 12 Thus, we conclude the following. First, for the reasons set forth above, R.A.'s juvenile adjudication was not a criminal matter. Second, this Court has no authority to ignore the fact that the proceeding was a juvenile proceeding. J.H., 737 A.2d at 278; K.D., 696 A.2d at 235. Third, the Legislature expressly limited the power to issue protective orders under § 4954 to courts with jurisdiction over criminal matters. Fourth, because the juvenile court did not have jurisdiction over a criminal matter at the time that it issued the protective order, it lacked statutory authority to issue the order.
¶ 13 We wish to stress that we do not disagree with the message delivered pursuant to the protective order. In his decision from the bench, Judge Kleinfelter opined:

*1225 [T]he authority and responsibility of law enforcement officials, in this case the Harrisburg Bureau of Police and the Dauphin County District Attorney, is as viable in the hallways of William Penn and John Harris as it is on Market Square. Any attempt of the school district to curtail the rights of citizen teachers, citizen staff, or citizen students to report the commission of crime or seek assistance as a victim of crime is anathema to the public policy of this Commonwealth and a violation of fundamentally declared Constitutional liberties.
* * *
While one would assume that a school district would have a collateral interest in prosecuting crimes committed by students on its property, their interest is only collateral to the superior authority of the district attorney and the police.
Frankly, in this case, we are perplexed by the district's willingness to align itself against the City of Harrisburg, the district attorney, and the juvenile court. These parties should be allies, not protagonists [sic], in what in theory should be a common goal, quality education pursued in a safe environment.
N.T., 8/12/99, at 6-7, 9-10. Like the juvenile court, we do not condone the practice of disciplining teachers for immediately notifying city police of attacks that take place on school property. We also appreciate the court's recognition of a difficult problem in the District and its attempts to fashion a solution that emphasizes safety within District schools. We are constrained, however, to conclude that the court lacked statutory authority to impose the order at issue in this case.[5]
¶ 14 Our esteemed colleague would hold that juvenile courts have jurisdiction over criminal matters because delinquent acts are those which are designated a crime under the laws of the Commonwealth. Concurring Statement at 1227, citing, 42 Pa.C.S. § 6302. While we see the logic and appeal of this position, we are constrained to disagree. It is true that juvenile courts concern themselves with acts which would be considered criminal if they were committed by adults. Our Legislature, however, has seen fit through the Juvenile Act to authorize separate non-criminal proceedings to adjudicate these matters, precisely because the perpetrators are not adults. As noted above, these proceedings are materially different from criminal proceedings in many respects. Moreover, if the Legislature sees fit to extend Section 4954 to juvenile proceedings, it is certainly free to do so. At present, however, we are constrained by the plain language of the statute itself to limit Section 4954 to criminal matters.
¶ 15 Order vacated. Jurisdiction relinquished.
¶ 16 McEWEN, President Judge, files a Concurring Statement.
McEWEN, President Judge, concurring:
¶ 1 While the expression of the majority view reflects a careful analysis and persuasive rationale and while I join in the ruling of the majority, I differ with my distinguished colleagues as to the reason why the order of the Court of Common Pleas of Dauphin County must be vacated.
¶ 2 The legislature of this Commonwealth has decreed in the Public School Code of 1949 that:
The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers, and other appointees or employes during the *1226 time they are engaged in their duties to the district....
24 Pa.C.S. § 5-510.
¶ 3 The clear and certain declaration of the statute reveals the intention of the enacting branches that the primary responsibility for the administration and operation of the school districts rests with the board of school directors in any school district. Id. Thus, courts should not intrude upon the prerogative of school boards to direct both the manner in which teachers shall respond to situations that arise in the school, as well as the method of enforcing those directives.[6] It is, therefore, upon this declaration of the School Code that I would vacate the Order of the trial courtwhile hastening to emphasize that, since I am of the mind that sanction must not befall this, or any other, teacher in the absence of a written policy addressing such situations, the Harrisburg School District wisely acted when it expunged all disciplinary references from the personnel file of the subject teacher.
¶ 4 It is fitting, perhaps, under all the circumstances and the particular facts of this case, to address the wisdom of the legislative directive. This entire matter has arisen from an incident[7] in which a nine-year-old special education student thrust a knee into the groin of a teacher when that teacher intervened in a dispute. While the teacher testified that the blow took wind right out of me and it was very painful, he was able to return to his class, and continued instruction for the day as best [he] could. No weapon was involved, no student was injured, and the teacher did not require medical attention.
¶ 5 The thought occurs that the instant occurrence is the very type of incident which school administrators would want to review before summoning city police to the school grounds. The record indicates that the Harrisburg School District has over 1,000 employees, 650 of whom are teachers, counselors or administrators. Anger, fear, or other emotions in a given situation can cause people to reactor overreact in a variety of ways. Therefore, it is not unreasonable for a school board, in the best interest of the children, school personnel, including teachers, and the public at large, to impose a procedure designed to enhance the uniformity of the response of employees to student misconduct. Thus some would suggest that an abundance of wisdom underlies the decision of the legislature to restrict to the school boards the prerogative of drafting policies and regulations for the operation of school districts, and any revision in that sound public policy must be reserved to the legislature itself.
¶ 6 I proceed to this concurring statement for the further reason that I do not share the view of the majority that Section 4954 of the Crimes Code, 18 Pa.C.S. § 4954, is not also applicable to proceedings in juvenile court. Section 4954 provides, in relevant part:
§ 4954. Protective orders
Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:
(1) An order that a defendant not violate any provision of this subchapter or section 2709 (relating to harassment and stalking).
(2) An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.
(3) An order that any person described in paragraph (1) or (2) *1227 maintain a prescribed geographic distance from any specified witness or victim.
(4) An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may impose.
18 Pa.C.S. § 4954 (emphasis added).
¶ 7 One of the stated purposes of the Juvenile Act is to provide remedies [c]onsistent with the protection of the public interest, 42 Pa.C.S. § 6301. To the extent that the Juvenile Act is concerned with the public interest, it should be read in pari materia[8] with the stated purpose of the Crimes Code, specifically, [t]o forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest. 18 Pa.C.S. § 104(1).
¶ 8 A delinquent act, which is the basis under the Act for a finding of delinquency and dependency, is an act designated a crime under the laws of this Commonwealth. 42 Pa.C.S. § 6302 (emphasis added). Therefore, when a juvenile is charged with a delinquent act, the juvenile court empowered to adjudicate that charge is a court with jurisdiction over a criminal matter, 18 Pa.C.S. § 4954, and is thereby vested with authority to enter a protective order.
¶ 9 Moreover, I am of the mind that the focus of Section 4954 is not the actor but the victim, and that a person who may be threatened or intimidated by a juvenile is no less a victim because the offender is less than 18 years old.
¶ 10 Thus it is that I conclude that the juvenile court is permitted under the terms of Section 4954 to issue appropriate protective orders.
NOTES
[1] The HEA is the collective bargaining agent for teachers in the District.
[2] R.A.'s counsel has filed a brief supporting the District's position. R.A.'s counsel also writes to provide this Court with a substantive history about R.A.'s behavior in school, behavior the lower court erroneously believed warranted the immediate presence of the Harrisburg Police. R.A.'s Brief at 4. It should be noted that the protective order at issue has, at best, only an attenuated connection to R.A.
[3] The trial court did not cite the Juvenile Act as authority for issuing the order. Indeed, we have found no authority in the Juvenile Act for issuing a protective order. After adjudicating a child dependent or delinquent, the juvenile court's authority is limited to selecting from specific options listed in the Act. See 42 Pa.C.S.A. § 6351 (four options in the case of dependent children); 42 Pa.C.S.A. § 6352 (six options in the case of delinquent children). An order which does not comport with one or more of the enumerated options is void for lack of statutory authority. In re Carroll, 260 Pa.Super. 23, 393 A.2d 993, 994 (1978) (per curiam); Commonwealth v. Milchak, 249 Pa.Super. 381, 378 A.2d 346, 347 (1977). None of the enumerated options in the Juvenile Act includes a protective order.
[4] Cf., K.D. v. J.D., 696 A.2d 232, 235-236 (Pa.Super.1997) (proceedings under the Protection from Abuse Act are not criminal proceedings because the primary goal of the Act is prevention of future abuse rather than punishment of past conduct, even if the underlying charges are of a criminal nature).
[5] As a result of our disposition, we need not address the somewhat broader question of whether juvenile courts generally have subject matter jurisdiction over issues related to the administration of schools. We also need not address the question of whether § 4954 authorizes the particular type of protective order issued in this case. Finally, our disposition does not preclude the parties from litigating the merits of this matter in other appropriate forums.
[6] The method of enforcement would certainly seem a proper subject of collective bargaining.
[7] It is interesting to note that the incident which is the subject of this appeal is not the incident which gives rise to the adjudication of dependency.
[8] 1 Pa.C.S. § 1932.