C.K.

v.

**NORTHWESTERN HUMAN SERVICES d/b/a Northwestern Academy School, et al.**

No. CIV.A. 02–8562.

United States District Court, E.D. Pennsylvania.

March 12, 2003.

Barry H. Dyller, Wilkes–Barre, PA, for C.K., Plaintiff.

Richard W. Yost, Yost & Tretta, Philadelphia, PA, for Northwestern Human Services, dba Northwestern Academy School, Christopher Ross, Susan Marie Alberti, Defendants.

---

*MEMORANDUM*

BARTLE, District Judge.

The narrow question before us is whether a private facility for delinquent children and its employees are state actors under 42 U.S.C. § 1983.

Plaintiff C.K. has sued defendants Northwestern Human Services d/b/a Northwestern Academy School ("Northwestern Academy")[1] as well as two of its employees under § 1983 and for negligence under the Pennsylvania common law. Plaintiff alleges that when she was fifteen years old, she was charged with a crime, found to be delinquent by the Court of Common Pleas of Luzerne County, Pennsylvania, and was committed by the court for rehabilitation to Northwestern Academy located near Shamokin in Northumberland County. According to the complaint, she was sexually assaulted by one of its employees, the defendant Christopher Ross. Plaintiff avers that defendant Susan Marie Alberti ("Alberti"), a supervisory employee, engaged in a cover-up of these predatory activities pursuant to a policy and custom of Northwestern Academy.

Northwestern Academy and Alberti have filed a motion to dismiss the § 1983 claim on the ground that they were not acting under color of state law. After a telephone conference with the court and counsel, these defendants filed an affidavit which set forth additional facts about them beyond what is contained in the complaint. According to the affidavit, Northwestern Human Services, Inc. is a Pennsylvania non-profit corporation "which provides a variety of services to children and adults in Pennsylvania." Northwestern Academy, a non-profit subsidiary corporation, serves as "a comprehensive facility for delinquent youth." Defendant Alberti was an employee of Northwestern Academy in the position of Program Director. The court offered plaintiff an opportunity to take discovery and submit further evidence on the issue of state action, but she declined.

Since we now have before us an affidavit in addition to the complaint, we will treat defendants' motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002). For present purposes, defendants have assumed that the facts set forth in the complaint are true.[2]

Under the Pennsylvania Juvenile Act, a delinquent child is defined as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa. Cons.Stat. Ann. § 6302. A "delinquent act," with exceptions not relevant here, "means an act designated a crime under the law of this Commonwealth . . . ." *Id.*

If a court finds a child to be delinquent, it may issue orders

> consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable

---

1. According to an affidavit filed by defendants, the correct name is Northwestern Academy. Northwestern Human Services, Inc. is its corporate parent.

2. While the record is silent on the point, it is a reasonable inference that the Commonwealth or Luzerne County paid, in whole or in part, for C.K.'s stay at Northwestern Academy.

the child to become a responsible and productive member of the community. *Id.* at § 6352(a).

■ Nonetheless, the court's disposition is limited to the specific options authorized under the Act. *In re R.A.,* 2000 PA Super 323, 761 A.2d 1220, 1223 n. 3 (2000). Among other options, the court may "commit[ ] the child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare." 42 Pa. Cons.Stat. Ann. § 6352(a)(3). The Luzerne County Common Pleas Court committed C.K. to Northwestern Academy under this provision.

Section 1983, under which plaintiff has sued, provides in relevant part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added).

The parties have not cited and we have not found any Supreme Court or Third Circuit decision which has decided whether a private facility such as Northwestern Academy acts under color of state law when it has in its custody a delinquent child pursuant to a court order. There are, however, a number of decisions that point the way.

In *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Supreme Court was faced with the question whether a private school to which public school and mental health officials in Massachusetts referred students having drug, alcohol, or behavioral problems acted under color of state law when it fired certain employees. Virtually all of the school's funds came from governmental agencies. *Id.* at 840, 102 S.Ct. 2764. The Supreme Court explained that the school was no different than private contractors that build roads or ships for the government. *Id.* at 840–41, 102 S.Ct. 2764. While the Court agreed that education of "maladjusted high school students is a public function," a private entity doing so does not make itself a state actor. *Id.* at 842, 102 S.Ct. 2764. The Court held that the school could not be sued under § 1983. *Id.* at 843, 102 S.Ct. 2764.

In *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), a prisoner brought suit under § 1983 against his treating physician who was a private orthopedist under contract to provide services on a part-time basis to a North Carolina state prison hospital. The question presented to the Supreme Court was whether the physician's treatment of the prisoner was fairly attributable to the state and thus, whether he was acting under color of state law. *Id.* at 43, 108 S.Ct. 2250. Distinguishing *Rendell–Baker,* the Supreme Court answered in the affirmative:

> If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care.

*Id.* at 55, 108 S.Ct. 2250. The Court continued:

> Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it

does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*Id.* at 56, 108 S.Ct. 2250 (footnote omitted).

The most relevant Third Circuit decision seems to be *Robert S. v. Stetson School, Inc.*, 256 F.3d 159 (3d Cir.2001). There Robert, a minor student sued the Stetson School and several of its employees under § 1983 for physical and psychological abuse. *Id.* at 161. The Court of Common Pleas of Philadelphia County decided he was a "dependent child"[3] and, with the consent of his mother, placed him in the temporary custody of the Philadelphia Department of Human Services. *Id.* at 161–62. The Court of Appeals emphasized that at no time was he found to be a "delinquent child" or to have been convicted of a crime. *Id.* at 162. It was the Department of Human Services, his temporary legal guardian, and not the court, that enrolled him at Stetson, a private residential institution with some fifty-five students, all of whom were sex offenders. *Id.* Nonetheless, Stetson did not accept students with criminal records. *Id.* at 163. The City of Philadelphia paid part of the cost of each student's stay at Stetson while the remainder came from foundations, other charitable contributions and loans. *Id.* No student was permitted to leave the campus without permission. *Id.*

Relying on the Supreme Court's decision in *Rendell–Baker*, the Court of Appeals agreed with the District Court that Stetson and its employees were not state actors. In ruling as it did, however, the court pointed out that, "[t]here is ... no factual basis for analogizing Robert's situation at the Stetson School to that of a prisoner or a person who has been involuntarily civilly committed .... [H]e was not deprived of his liberty in contravention of his legal custodian's (or his mother's) wishes." *Id.* at 166–67 (footnote omitted). The Court of Appeals further declared that, "[t]he power that DHS [Department of Human Services] exercised over Robert is not comparable to the power that a state exercises over a person whose liberty is restricted as a result of a criminal conviction or involuntary civil commitment. The latter power is quintessentially governmental, but a legal guardian's authority over a minor is not." *Id.* at 167 n. 9.

The decision of Judge Bechtle in *McCullum v. City of Philadelphia*, No. CIV. A. 98–5858, 1999 WL 493696 (E.D.Pa. July 13, 1999), is also instructive. There, a prisoner at the City of Philadelphia's Curran–Fromhold Correctional Facility alleged he was assaulted by an employee of Aramark Services, Inc. ("Aramark"), the company that was under contract with the City to provide food services at the prison. *Id.* at *1. Aramark moved for judgment on the pleadings as to plaintiff's § 1983 claim on the ground that it was not a state actor. *Id.* Citing *West*, Judge Bechtle rejected the argument. *Id.* at *2–*3. He concluded that under the public function test, a private party is a state actor when it exercises power traditionally and exclusively within the province of the state. *Id.* Providing food to inmates was such a function. *Id.* at *3. The court cited a number of cases holding that a private entity operating a prison is acting under color of state law. *See, e.g., Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Gir-*

---

**3.** The Juvenile Act defines a "dependent child" differently than a "delinquent child."

42 Pa. Cons.Stat. Ann. § 6302.

*on v. Corrs. Corp. of Am.,* 14 F.Supp.2d 1245, 1247–51 (D.N.M.1998).

■ Northwestern Academy and its employees had custody of C.K., a delinquent child, pursuant to a court order when she was allegedly sexually assaulted by a Northwestern Academy employee. C.K. had been found to be a delinquent because she committed "an act designated a crime under the law of th[e] Commonwealth." 42 Pa. Cons.Stat. Ann. § 6302. The purpose of her commitment was rehabilitation, one of the generally accepted goals of confinement. Northwestern Academy, even though a private corporation, and its employees, were clearly exercising power that is "traditionally exclusively reserved to the State." *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (citation omitted). They were performing a function "quintessentially governmental." *Stetson,* 256 F.3d at 167 n. 9.

The situation here is similar to that of *West* and McCullum, where individuals were performing contract services in a prison setting, and unlike that in *Rendell–Baker* which involved discharged private school employees who were serving maladjusted children at the behest of public school and mental health officials. We see no basis to reach a different result than in *West* and *McCullum* simply because Northwestern Academy is a juvenile facility for delinquent children rather than a prison for adults. Both house persons involuntarily deprived of their liberty as a result of judicial process. Moreover, the court in *Stetson,* in finding no state action by a school for "dependent child[ren]," was careful to distinguish it from an institution for "delinquent child[ren]." *Stetson,* 256 F.3d at 162. The court's opinion, as we read it, strongly suggests that it would have found state action had Stetson been an entity having custody of children in the latter category.

Based on our analysis of the above cases, we conclude that Northwestern Academy and its employees were acting under color of state law when C.K. was in their custody. The motion of defendants Northwestern Academy (incorrectly denominated as Northwestern Human Services d/b/a Northwestern Academy School) and Susan Marie Alberti for summary judgment (incorrectly denominated as a motion to dismiss) as to plaintiff's claim under § 1983 will be denied.

### ORDER

AND NOW, this 12th day of March, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendants Northwestern Academy (incorrectly denominated as Northwestern Human Services d/b/a Northwestern Academy School) and Susan Marie Alberti for summary judgment (incorrectly denominated as a motion to dismiss) is DENIED.