J-A08034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.T.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MATERNAL GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2515 EDA 2019 |

Appeal from the Order Entered August 1, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000939-2018

BEFORE: LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: Filed: April 9, 2020

R.F. (Grandmother) appeals from the order entered in the Philadelphia County Court of Common Pleas, which: (1) dismissed her petition to involuntary terminate the parental rights of T.G.[1] (Father) to his minor child, L.T.G. (Child); (2) dismissed Grandmother's petition to adopt Child; and (3) granted Father an *ex parte* protective (or stay-away) order against Grandmother.[2] Grandmother challenges the protective order only; she

---

[1] Father has not filed a brief with this Court.

[2] The trial court's order also dismissed Grandmother's petition to confirm the consent of Child's mother, G.F. (Mother), to Grandmother's adoption.

contends the trial court lacked statutory authority or jurisdiction to enter it. We affirm.

Child was born in April of 2015; her parents are Father and Mother. Grandmother is Child's maternal grandmother. At the time of Child's birth, both parents were using opiates and/or heroin, and Grandmother and her husband (Mother's father) were Child's primary caregivers.[3] N.T. at 39. When Child was seven months old, she and Mother moved in with Mother's parents, while Father moved to his parents' home. Father initially had some visits with Child, but after his and Mother's relationship ended in January of 2017, Father no longer had visits.

In June of 2017, Father completed drug rehab treatment. N.T. at 10. Upon his request, Mother brought Child to see him once that month. *Id.* at 10-11. Thereafter, Father continued to ask for visitation, but Mother and her family did not respond. *Id.* at 11.

Accordingly, on February 21, 2018, Father filed a complaint for custody, seeking visitation with Child.[4] Meanwhile, three months earlier, in November

---

[3] Father testified he was taking opiates and Percocet, Mother testified she and Father both had "drug problems," while Grandmother testified they "were both heroin addicts." N.T., 8/1/19, at 9, 27, 39.

[4] The custody matter is listed separately at another trial docket, and that record is not currently before this panel. Nevertheless, Grandmother attached, to her petition to confirm consent, a copy of the detailed six-page custody order entered on November 28, 2018. Grandmother's Petition to

of 2017, Grandmother had also filed a complaint for custody. The parties appeared for a hearing before the Honorable Stella Tsai on November 28, 2018.[5] On that same day, Grandmother filed a petition to adopt Child, as well as a petition to terminate involuntarily Father's parental rights pursuant to Subsections 2511(a)(1), (2), (6), and (b) of the Adoption Act.[6] Following the hearing, Judge Tsai granted Grandmother sole legal and primary physical custody of Child, and granted Father partial custody in the form of supervised weekly visits at the family courthouse.

Grandmother's termination petition was listed at the instant docket, before the Honorable Daine Grey, Jr. (trial court). On April 17, 2019, Father filed the underlying counseled motion to dismiss Grandmother's termination petition. On June 7th, Grandmother filed a petition to confirm Mother's consent to Grandmother's adoption of Child.

The trial court conducted a hearing on Father's dismissal motion on August 1, 2019. Father and Grandmother were each represented by counsel.

---

Confirm Consent, 6/7/19, Exh. A (Custody Order, Phila. CCP Family Ct. Div. Case 0C1701595, 11/28/18) (Custody Order, 11/28/18).

[5] Father and Grandmother were each represented by counsel, who also appeared on their behalf at the underlying hearing on Father's petition to dismiss Grandmother's termination petition.

[6] 23 Pa.C.S. §§ 2101-2938.

Father, Mother, and Grandmother testified.[7]  Following the presentation of evidence, the trial court dismissed Grandmother's petition to terminate Father's parental rights, as well as her petitions to adopt Child and to confirm Mother's consent to such an adoption.  N.T. at 80-81.  The trial court proclaimed the hearing had concluded.  For ease of review, we excerpt the hearing transcript which indicated what transpired next:

> THE COURT: . . . This hearing is over and everybody is excused.
>
> [Father's counsel:] Thank you, Your Honor.
>
> THE COURT: [Addressing Grandmother's counsel: Y]ou need to inform your client that a contempt of court is very possible in this case because she admitted to violating the [custody] order. You need to talk to your client.
>
> Everyone is excused.
>
> (Brief pause.)

---

[7] Father also testified, and Grandmother acknowledged, that Grandmother had not brought Child to the supervised visits, as required by the November 18, 2018 custody order.  N.T. at 17-18, 49.  Father stated Grandmother was "in contempt of the court order," he filed papers in the custody matter, and they had "two court dates coming up."  **Id.** at 18.

We further note that throughout Grandmother's testimony, the trial court frequently directed her to respond only to counsel's questions — instructing her that she did not have "a license to sit on the stand and just talk" — and to abide by the court's commands for her to stop speaking when an objection was sustained.  N.T. at 40-46.  The court advised Grandmother to not "be defensive" in answering the questions posed by Father's counsel.  **Id.** at 61.  Grandmother also argued with the court over some of its rulings.  **See id.** at 47 (Grandmother stating "How is that an objection?," after court sustained objection).

[Father's counsel:] Your Honor, [Grandmother] did just leave out [sic] and specifically said, "I'm going to have to kill him."

THE COURT: Bring your client back in here. [Grandmother's counsel], I need your client back in here, now.

(Brief pause.)

THE COURT: Going back on the record.

[Grandmother's counsel:] I can't find her, I think she left.

THE COURT: [Father's counsel,] how do you want to deal with this?

[Father's counsel:] I'll be honest now that counsel is back in the room, we actually had a PFA hearing and we had to have sheriffs assist to leave out [sic], including myself. I had to have a sheriff take me to the garage, Your Honor. As [t]he Court is well aware, I've been practicing for quite some time now and I have not really ever had these types of issues, so I'm kind of a fish out of water and would take guidance from the Court.

THE COURT: Very often I would admonish people in this situation. I can't admonish someone who's not here.

[Father], do you feel comfortable and safe? How do you feel?

[Father:] Honestly, they've threatened my life before.

THE COURT: The Court is going to issue a stay away order against [G]randmother with respect to [F]ather . . . . The stay away order is going to be from his person, his phone, place of residence, his place of business, any letters or threating correspondence.

\* \* \*

THE COURT: [Grandmother's counsel,] do you have any objections?

[Grandmother's counsel]: I definitely have objections. Okay. [Grandmother] has been —

THE COURT: Let me state my grounds. The purpose of this stay away order is after this Court entered its ruling, [G]randmother walked out and said that she was going to have [to] kill [F]ather. That was a statement actually heard by [F]ather as well as [F]ather's attorney; am I correct with respect to that?

[Father's attorney]: Yes, that's correct. I was right here.

THE COURT: I heard something, I couldn't tell exactly what, but I saw and heard her mouth say something.

[Grandmother's c]ounsel, as an officer of the Court, I have no reason to disbelieve her statement. Do you have any reason, as an officer of the court, do you have any reason to disbelieve your colleague? Do you believe she is giving this Court false information with respect to what your client said?

[Grandmother's counsel]: I already said I did not hear her. That's the best I can do.

THE COURT: As a result, your objection is overruled, but noted. . . .

N.T. at 81-84.

The court entered a written protective order, in favor of Father and against Grandmother, "pursuant to [its] authority under Juvenile Act, 42 Pa.C.S.A. § 6301 . . . to ensure the safety and promote the best interests of [Child]."[8] Court Protective Order, 8/1/19. The face of the order stated it was valid for one year, until August 1, 2020. *Id.*

_____

[8] The trial court also cited Section 6351 of the Juvenile Act, which governs the disposition of dependent children. *See* Court Protective Order, 8/1/19. Because Child has not been adjudicated dependent, however, we deem Section 6351 not to apply. *See* 42 Pa.C.S. § 6351(a) ("If the child is found to be a dependent child the court may make any of the following orders . . . .").

Grandmother filed a timely notice of appeal, together with a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[9] She presents the following issues for our review:[10]

> 1. Did the trial court lack jurisdiction under the Juvenile Act 18 Pa.C.S.A. § 6301 motion for a protective order [sic] where the trial court had closed the underlying case by granting . . . Father's Motion to Dismiss Involuntary Termination as well as Dismissing . . . Grandmother's Petition for Adoption and Petition to Confirm Consent and had dismissed all parties from the courtroom?
>
> 2. Did the trial court abuse its discretion and violate the constitutional due process rights of [Grandmother] by failing to provide any attempt at meaningful notice on an oral motion for a protective order where only mere seconds were given to looking for [Grandmother] in the hallway outside the courtroom to locate [Grandmother] after she had left the courtroom, and, [Grandmother's] counsel was not given an opportunity to contact her client by text or mobile phone? Further, were [Grandmother's] constitutional due process rights violated at the *ex parte* hearing where [her] counsel . . . was not permitted to cross-examine the witnesses, nor present any testimony, and, the

_____

[9] On November 26, 2019, following the filing of the notice of appeal and Rule 1925 statement, the trial court permitted Grandmother's counsel, Mary Catherine Baur, Esquire, to withdraw. On December 16, 2019, Grandmother's current counsel, Louisa Ashmead Robinson, Esquire, entered her appearance in this Court.

[10] Appellant's Rule 1925(b) statement raised eight issues for review, including whether the trial court: should have reviewed Grandmother's termination petition; erred in granting Father's petition to dismiss the termination petition; should have appointed counsel to represent Mother and Child; should have permitted Grandmother's husband to testify; and should have ordered drug testing for Father. Grandmother's Statement of Matters Complained of on Appeal, 8/3/19, at 1-2. Grandmother, however, has abandoned all of these issues on appeal, and instead pursues only one issue that was raised in the Rule 1925 statement: whether the trial court should have scheduled a hearing on its protective order. ***See id.*** at 2.

entire *ex parte* hearing lasted less than five minutes with [F]ather never even testifying that he heard the alleged threat, and, where the trial court testified that he accepted the word of opposing counsel as an officer of the court without having opposing counsel cross-examined by [Grandmother's] counsel . . . ?

3. Did the Juvenile trial court err as a matter of law by issuing a protective order in a matter where the original, underlying case was a juvenile matter and the Legislature has given exclusive authority to issue protective orders to the Criminal Courts, and, this order is exposing [Grandmother] to potentially grave consequences for a period of one year including the possibility of a warrantless arrest and felony charges for a period of one year, and, this order has severe collateral ramifications in the open contested custody matter between [Grandmother] and [F]ather?

Grandmother's Brief at 6-7.[11]

We address Grandmother's claims together. She contends the Juvenile Act did not provide any authority for the trial court to issue a protective order. Grandmother also avers the court lacked jurisdiction to issue the protective order because the court had already ruled on the underlying petitions, and thus there was no case or controversy currently before it, and the court had excused the parties from the courtroom. Grandmother further asserts the court violated her due process rights by conducting an *ex parte* hearing on the protective order. She alleges the court did not allow enough time for her counsel to look for her, and the court should have directed counsel to call

---

[11] We remind counsel: "The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein." **See** Pa.R.A.P. 2116(a).

Grandmother's cell phone to ask her to return to the courtroom. Grandmother claims that because she was not present, the court should have scheduled a hearing so that she could appear and be heard, and in any event, the court erred in precluding her counsel from cross-examining witnesses. After careful review, we disagree.

We emphasize Grandmother has not cited — and we have not discovered — any authority **prohibiting** a Pennsylvania family court from issuing a protective order. Instead, Grandmother relies upon Pa.R.C.P. 227.1, which she properly states allows a "party" to file a post-trial motion. *See* Pa.R.C.P. 227.1(a) ("After trial and upon the written Motion for Post-Trial Relief filed by any part, the court may [grant the enumerated relief]."); Grandmother's Brief at 15-16. Grandmother extrapolates from this rule that the trial court in this matter was not a "party." *Id.* at 16. Grandmother also cites Pa.R.A.P. 903(a), which she characterizes as stating a trial court "retains jurisdiction for a party to file an appeal within thirty days." *Id.* Grandmother reasons Rule 903 does not provide the court any "jurisdiction to reach back into the case to issue a protective order once it has been closed by either dismissal or denial [sic]." *Id.*

We disagree that either Rule of Civil Procedure 227.1 and or Rule of Appellate Procedure 903 prohibited the trial court from issuing a protective order. Instead, the plain language of those rules simply provides,

respectively, that a party may file a post trial motion, and that a party has 30 days to file an appeal. *See* Pa.R.C.P. 227.1; Pa.R.A.P. 903.

Grandmother also cites this Court's decision in *In the Interest of R.A.*, 761 A.2d 1220 (Pa. Super. 2000) (*R.A.*), in which the trial court relied on a Crimes Code statute, 18 Pa.C.S. § 4954,[12] to issue a protective order in a juvenile adjudication matter. In *R.A.*, this Court held that Section 4954 did not provide the court authority to issue the protective order, because the juvenile proceedings were not "criminal" matters. *Id.* at 1225. While we agree Section 4954 would likewise preclude the trial court from issuing a protective order in this case, the trial court did not, as occurred in *R.A.*, purport to enter the order pursuant to Section 4954.

Meanwhile, Grandmother makes no argument addressing Section 6301 of the Juvenile Act, upon which the trial court's written order relied. *See* Court Protective Order, 8/1/19. Section 6301 sets forth the purposes of the Juvenile Act, including: "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter;" and "[t]o provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair

---

[12] *See* 18 Pa.C.S. § 4954 ("Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence . . . issue protective orders . . . .").

hearing and their constitutional and other legal rights recognized and enforced." 42 Pa.C.S. § 6301(b)(1.1), (4).

Furthermore, we note our Supreme Court has stated:

Although the [Pennsylvania] Constitution does not enumerate every specific power inherent in courts and incidental to the grant of judicial authority under Article V, the Judicial Code serves to codify some of these non-particularized powers. Section 323 of the Judicial Code provides:

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.

42 Pa.C.S. § 323. Section 912 of the Judicial Code similarly establishes that every court of common pleas "shall have power to issue, under its judicial seal, every lawful writ and process . . . as such courts have been heretofore authorized by law or usage to issue[,]" and every judge of a court of common pleas "shall have all the powers of a judge or magisterial district judge of the minor judiciary." 42 Pa.C.S. § 912.

***In re Lackawanna County***, 212 A.3d 1, 12 (Pa. 2019).

In its opinion, the trial court stated its reasons for granting Father a protective order against Grandmother:

[A]fter this Court issued its order granting Father's motion to dismiss [Grandmother's] petition, [Grandmother] walked out of the court stating that she's "going to have to kill" Father in an effort to keep the Child away from him. [Both Father and his counsel heard this statement.] When this Court tried to recall [Grandmother] in the courtroom, she had already left the building. Coupled with the fact that Father testified that his life has been

- 11 -

threatened by [Grandmother] and her family before, this Court was justified in issuing the protective order.

Trial Ct. Op., 10/17/19, at 7.

We note that at the hearing, Father testified — and Grandmother acknowledged — that she had not brought Child to the weekly supervised visits, in violation of the November 18, 2018, custody order. N.T. at 18, 49. This evidence supports the trial court's finding that Grandmother's threats of violence related to her endeavor to keep Father from Child. Furthermore, we reiterate Father's counsel's statement that Father "had a PFA hearing," and that both she and Father "had to have sheriffs assist" them in leaving the courthouse. *Id.* at 81-82. In light of all the foregoing, as well as our review of the hearing transcript, we conclude the trial court did not err in issuing the one year *ex parte* protective order pursuant to its authority under Section 6301 of the Juvenile Act and the general powers of the Courts of Common Pleas.[13] *See* 42 Pa.C.S. §§ 323, 912, 6301; *In re Lackawanna County*, 212 A.3d at 12.

Order affirmed.

---

[13] We note the trial court's opinion cited Fed.R.C.P. 65(b)(2) ("Every temporary restraining order issued without notice . . . expires at the time after entry — not to exceed 14 days — that the court sets.") and two federal Third Circuit Court decisions. Trial Ct. Op. at 7. We agree with Grandmother that the court's reliance on this federal authority is misplaced, where this case is governed by the Pennsylvania Adoption Act, Pennsylvania Juvenile Act, and the Pennsylvania Rules of Civil Procedure. Nevertheless, we may affirm the court's order on any basis. *See In re E.M.I.*, 57 A.3d 1278, 1290 n.6 (Pa. Super. 2012).

Judge Kunselman joins the memorandum.

Judge Lazarus concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/20