J-A28031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: E.T., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.T., A MINOR, | |
| Appellant | No. 186 EDA 2015 |

Appeal from the Dispositional Order December 19, 2014
In the Court of Common Pleas of Monroe County
Juvenile Division at No(s): CP-45-JV-0000242-2014

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:  **FILED NOVEMBER 18, 2015**

E.T. appeals from the juvenile court's December 19, 2014 dispositional order placing E.T. in the Abraxas Leadership Development Program ("Abraxas").  We affirm.

The record reveals that E.T. had four prior open juvenile delinquency matters dating from May of 2012 to May of 2014 at the time of the challenged dispositional order.  Those adjudications resulted in placements at Northwestern Academy's V-CORE program and Summit Academy, as well as probation.  E.T. was on probation when the underlying incident occurred.

On October 23, 2014, while living with his family in Monroe County and attending school in Northampton County, E.T. physically attacked another student.  Based on the incident, E.T. was detained at the Northampton Juvenile Justice Center ("JJC").  The Commonwealth filed a

petition, alleging that E.T. committed the delinquent acts of simple assault, disorderly conduct, and harassment. On November 10, 2014, E.T. admitted to one count of disorderly conduct, a violation of 18 Pa.C.S. § 5503(a)(1). On November 21, 2014, the juvenile court ordered that E.T. be placed at Glen Mills Schools, a residential facility. E.T. did not file a post-dispositional motion pursuant to Pa.R.J.C.P. 620(B)(1).

Upon review of E.T.'s psychological evaluation, Glen Mills Schools rescinded its offer to accept E.T. Therefore, E.T. remained in detention at the JJC, pending a re-disposition hearing on December 19, 2014. Following that hearing, the juvenile court ordered that E.T. be placed at Abraxas for a period of time consistent with the provisions of the Juvenile Act and the rules of civil procedure governing juvenile court. N.T., 12/19/14, at 10–11. On December 24, 2014, E.T. filed a post-dispositional motion, which the juvenile court denied on December 29, 2014. This timely appeal followed. E.T. and the juvenile court have complied with Pa.R.A.P. 1925.

E.T. presents the following questions for our consideration:

I.   Whether the Juvenile Court violated Title 42 of the Pennsylvania Consolidated Statutes, Section 6353(a), by placing [E.T.] at Abraxas LDP Program [sic] for an unspecified period of time, following and [sic] Admission to Disorderly Conduct, a delinquent act which would be graded as a Misdemeanor of the Third Degree, were [E.T.] an adult.

II.  Whether the Juvenile Court abused its discretion in placing [E.T.] at Abraxas LDP. This question includes the following subsidiary questions:

> A.   Whether Abraxas LDP was the least restrictive placement for [E.T.]
>
> B.   Whether the Juvenile Court adequately stated its reasons for its placement of [E.T.] at Abraxas LDP pursuant to Title 42 of the Pennsylvania Consolidated Statutes, Section 6352(c).
>
> C.   Whether it was an abuse of discretion and a violation of [E.T.'s] Due Process [rights] when the Juvenile Court failed to take into consideration the two (2) months that [E.T.] had spent in secure Juvenile Detention prior to the placement in fashioning the disposition.

E.T.'s Brief at 7.   Essentially, E.T. challenges the juvenile court's failure to give him credit for two months of detention prior to the December 19, 2014 dispositional order and his placement at Abraxas.

Preliminarily, we question whether the passage of time has rendered this appeal moot.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot.  An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law.  In that case, an opinion of this Court is rendered advisory in nature.  An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re J.A.*, 107 A.3d 799, 811–812 (Pa. Super. 2015) (quoting *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (internal citations and quotations omitted)).

> Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question

presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*In re D.A.*, 801 A.2d at 616 (citations omitted).

In this appeal, E.T. asks us to reverse the juvenile court's dispositional order placing him at Abraxas. The juvenile court's December 19, 2014 order effectively placed E.T. at Abraxas for six months, resulting in a review hearing on or about June 19, 2015. E.T.'s current placement status does not appear of record. Arguably, therefore, our decision in this appeal may not have any legal force or effect. *See In re D.A.*, 801 A.2d at 616. Nevertheless, we conclude that we are able to decide this appeal, as it presents questions that are "capable of repetition and apt to elude appellate review," and thus are excepted from the mootness doctrine. *See In re J.A.*, 107 A.3d at 811–812 (reviewing appeal rendered moot by trial court order entered after review hearing conducted while appeal was pending). We, therefore, proceed to address this appeal.

Where a juvenile challenges the authority of the court to impose the disposition in question, it is a challenge to the legality of the disposition. *In re S.A.S.*, 839 A.2d 1106, 1107 (Pa. Super. 2003). "Accordingly, our standard of review for such a claim is plenary, and it is limited to determining whether the lower court committed an error of law." *In re J.M.*, 42 A.3d 348, 350 (Pa. Super. 2012). In the event a judge enters a dispositional order that provides for commitment, the judge is required to

review the propriety of that commitment every six months and must also hold a disposition review hearing at least every nine months. ***In re M.D.***, 839 A.2d 1116, 1119 (Pa. Super. 2003).

The statutory sections at issue in this appeal provide as follows:

> No child shall initially be committed to an institution for **a period longer than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less**. The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered. . . . [T]he committing court shall review each commitment every six months and shall hold a dispositional review hearing at least every nine months.

42 Pa.C.S. § 6353(a) (emphasis supplied). Disorderly conduct "is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist." 18 Pa.C.S. § 5503(b). "A crime is a misdemeanor of the third degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than one year." 18 Pa.C.S. § 106(b)(8). "The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S. § 9756(b)(1).

Additionally, the juvenile court:

> shall review its disposition and conduct dispositional review hearings for the purpose of ensuring the juvenile is receiving necessary treatment and services and that the terms and

- 5 -

conditions of the disposition are being met. . . In all cases, **the court shall conduct dispositional review hearings at least every six months**.

Pa.R.J.C.P. 610(A)(1) (emphasis supplied). Pa.R.J.C.P. 610 allows for detention of a juvenile pending a court hearing whenever there is a request for a change in the dispositional order. Pa.R.J.C.P. 610(B).

E.T. argues that the two months he was detained in the JJC and his placement in Abraxas for an unspecified period violated 42 Pa.C.S. § 6353(a). E.T.'s Brief at 13. According to E.T., an adult convicted of disorderly conduct could be sentenced to incarceration for six to twelve months. *Id.* However, E.T. continues, because the juvenile court merely provided that E.T.'s placement at Abraxas would be reviewed pursuant to the Juvenile Act and rules of juvenile procedure, E.T. will have served an initial period of confinement of close to eight months, "a period greater than the maximum minimum sentence that an adult could legally have received if convicted of the same offense." *Id.* at 14.

In its Rule 1925(a) opinion, the juvenile court refutes E.T.'s challenge on three grounds: the disposition was not inconsistent with the language of section 6353(a); the placement at Abraxas was not an initial placement but a modification of a prior dispositional scheme; and E.T.'s challenge to the placement at Abraxas was premature. The juvenile court detailed its analysis as follows:

> Initially, [E.T.] did not cite any authority that would support his attempt to import "adult" sentencing concepts into delinquency dispositions in Juvenile Court. Delinquency

proceedings are statutorily and jurisdictionally separate and distinct from criminal proceedings. Each type of case is guided by its own separate set of rules adopted by our Supreme Court. Similarly, each type of case is governed by its own legislative scheme. Delinquency cases are governed by the Juvenile Act, while criminal proceedings are controlled by various other statutes and statutory schemes. Significantly, the Sentencing Code, the Sentencing Guidelines, and attendant sentencing rules apply in criminal proceedings, but not delinquency proceedings, and the provisions of the Juvenile Act and the Rules of Juvenile Court Procedure that pertain to juvenile dispositions and commitments do not apply in criminal cases. In this regard, sentences in criminal court, once final, are not subject to on-going review and modification. In contrast, it is the very essence of Juvenile Court to regularly review juveniles and their and [sic] commitments so that dispositional schemes may be modified, as needed, to achieve balanced and restorative justice which, as discussed below, is one purpose of the Juvenile Act and the statutory goal for delinquency dispositions. There is simply no support for [E.T.'s] assertion that "adult" indeterminate sentencing concepts must be incorporated into delinquency dispositions.

Additionally, [E.T.'s] contention is contrary to the plain language of Section 6353(a).

\* \* \*

Here, Section 6353(a) establishes time limits for juvenile placements. However, it does not, as [E.T.] implies, mandate that a court specify the length of each commitment at the time the placement is ordered. Instead, in keeping with the purposes and goals of the Juvenile Act, and in recognition that the persons subject to delinquency dispositions are children, Section 6353(a) tempers its time limitation with the requirement that dispositions and commitments be regularly reviewed so that a commitment may be terminated or extended and a disposition may be modified as warranted to meet the ever-changing needs of the juvenile for whom the dispositional scheme was created. As long as the limitation period is not exceeded and the disposition and commitment are regularly reviewed, Section 6353(a) is satisfied.

In this regard, Section 6353(a) limits an initial placement and any extension to "four years or a period not longer than the

juvenile could have been sentenced by the court if he had been convicted of the same offense as an adult." By its express terms, this provision applies to the statutory *maximum* sentence to which an adult could be sentenced – the longest period of time an adult could legally spend in jail – and not, to use the words of the Juvenile's attorney, the "maximum *minimum* sentence" calculated using Pennsylvania's indeterminate sentencing rules and procedures. *See Matter of Firster*, 457 A.2d 546 (Pa. Super. 1983).

Since in this case [E.T.] was not committed for a period in excess of one year, the placement will by both law and the express terms of our order be reviewed within six months, long before the one-year limit is reached, and [E.T.] has in fact been in placement for less than one year, it is clear that Section 6353(a) has not been violated. Thus, [E.T.'s] argument lacks merit.

The lack of merit is even clearer when all of the cases for which the re-disposition hearing was convened are considered together. The limitation period relied on by [E.T.] applies only to an *initial* placement. However, under the clear language of Section 6353(a), an initial commitment may be extended or modified if the extension or modification is necessary to "effectuate the original purpose for which the order was entered." Modification of a prior dispositional scheme is exactly what happened here.

As discussed, the re-disposition hearing was noticed and convened to address all five of [E.T.'s] delinquency cases. While placement at Abraxas might be considered an initial commitment if this case were viewed alone and in [a] vacuum, this case does not stand alone and the dispositional scheme was not imposed in a vacuum. Instead, the placement about which [E.T.] complains was an unseverable part of a combined dispositional scheme, individualized for [E.T.], imposed globally in all five delinquency cases, just as [E.T.'s] placement at Summit Academy and subsequent release on probation were globally ordered and then reviewed together as new cases were opened over time as the Juvenile continued to commit [offenses] and make admissions. This case was simply the most recent in a string of on-going cases that have historically been considered and reviewed together, and for which combined dispositions and review hearing orders have been entered. Under these facts and

circumstances, placement at Abraxas was not an initial or even an extended commitment within the meaning of Section 6353(a). Instead, consistent with actions taken in [E.T.'s] other cases, placement there was a modification of a prior dispositional scheme that was prompted and warranted by [E.T.'s] commission of a new [offense]. Since our order specified that the modified dispositional scheme which included committing [E.T.] to Abraxas would be reviewed within six months as mandated by Section 6353(a), it is clear that we did not violate that statute. *See also* Pa. R.J.C.P. 610A.

Additionally, and for many of the same reasons, [E.T.'s] contention is premature. Even if [E.T.'s] interpretation of Section 6353(a) as applied to the facts and circumstances of this case were accepted, no violation of the statutory limitation has yet occurred. The proper procedural mechanism for requesting a release from placement to remedy or prevent a violation of Section 6353(a) would be to file a petition for release, at or before expiration of the applicable placement limitation period, not an anticipatory appeal from an order of disposition.

Juvenile Court Opinion, 3/23/15, at 13–17 (footnote omitted; emphasis in original).

Upon review, we discern no error of law in the juvenile court's reasoning and disposition. As set forth above, Pa.R.J.C.P. 610(B) allows for detention of a juvenile pending a court hearing where a change of disposition has been requested. As a result of Glen Mills Schools' decision not to accept E.T., E.T. was lawfully detained pending the court's re-disposition hearing regarding an acceptable, alternative placement. The record establishes that the Commonwealth had "been actively working on getting [E.T.] into an appropriate program" during the two-month detention. N.T., 11/19/14, at 7–9. Moreover, as the juvenile court thoughtfully explained, E.T. had four previous dispositions which came under review at

the December 19, 2014 re-disposition hearing. Thus, the juvenile court's order could be considered to be a modification of a prior dispositional scheme, which took into account E.T.'s most recent admission-based adjudication of disorderly conduct and which was imposed following a hearing held two months after his most recent detention. Juvenile Court Order, 3/23/15, at 15–16.

Even if this were an initial placement, however, E.T.'s challenge would fail. This Court has recognized that "juvenile proceedings are not criminal proceedings." *In re S.A.S.*, 839 A.2d at 1108 (citation omitted). In the context of a probation disposition order, the *In re S.A.S.* Court opined:

> We agree with [the a]ppellant that a juvenile's term of commitment may not exceed four years or the maximum term of imprisonment he could have received if convicted as an adult. *See* 42 Pa.C.S.A. § 6353. We also agree that under the sentencing code for adult offenders, a term of probation may not exceed the possible maximum term of imprisonment. *See* 42 Pa.C.S.A. § 9754(a). However, "juvenile proceedings are not criminal proceedings." *See In re R.A.*[, 761 A.2d 1220, 1223 (Pa.Super.2000)]. The Juvenile Act vests the court with authority to set a term of probation "under conditions and limitations the court prescribes," so long as the disposition is consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare. *See* 42 Pa.C.S.A. § 6352(a)(2). The probation limitations set forth in the crimes code are simply inapposite to the Juvenile Act; the two statutes encompass independently different systems with different purposes and rules. In contrast to the general adult sentencing code, the Juvenile Act empowers juvenile courts with wide latitude to render probationary terms that are appropriate to the individual circumstances of the child's case.

*Id.* at 1109. Ultimately, the *In re S.A.S.* Court held as follows:

[T]he juvenile court had the authority under the Juvenile Act to impose upon [the a]ppellant a period of probation that exceeded the maximum possible term of incarceration for the particular offense at issue and [the a]ppellant's disposition is not illegal. Nevertheless, [the a]ppellant's term of probation is still limited by the jurisdictional constraints of the Juvenile Act. *See* 42 Pa.C.S.A. §§ 6302, 6303. Moreover, given the quasi-open nature of [the a]ppellant's probation, [the a]ppellant may choose to petition the Juvenile Court for relief at the earliest appropriate time.

*Id.*

Similarly, in the present context, the Juvenile Act vests the juvenile court with authority to set a term of commitment to "an institution, youth development center, camp, or other facility," as long as the disposition is "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare." 42 Pa.C.S. § 6352(a)(3). Logically then, the confinement limitations set forth in the Pennsylvania Sentencing Code are also "inapposite to the Juvenile Act; the two statutes encompass independently different systems with different purposes and rules." *In re S.A.S.*, 839 A.2d at 1109.

E.T.'s second question challenges his placement in Abraxas on multiple grounds. According to E.T., Abraxas is not the least restrictive placement, the juvenile court failed to adequately state its reasons for the placement, and the juvenile court violated E.T.'s due process rights by failing to consider E.T.'s two months of detention. E.T.'s Brief at 14–17. We disagree.

The Juvenile Act shall be interpreted and construed as to effectuate, *inter alia*, the following purpose: "Consistent with the protection of the

- 11 -

public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community." 42 Pa.C.S. § 6301(b)(2). "The [Juvenile] Act grants the juvenile court broad discretion in determining the appropriate disposition for a delinquent child, which this Court will not disturb "absent a manifest abuse of discretion." *In re D.C.D.*, 2015 PA Super 192, ___ A.3d ___, ___ (filed Sept. 11, 2015) (quoting *In re L.A.*, 853 A.2d 388, 394 (Pa. Super. 2004)) (emphasis omitted). "[F]actual findings and credibility determinations in juvenile proceedings are within the exclusive province of the hearing judge." *In re B.T.*, 82 A.3d 431, 434 (Pa. Super. 2013) (citation omitted).

In its opinion to this Court, the juvenile court provided an insightful, frank, and detailed assessment of its ruling. Juvenile Court Opinion, 3/23/15, at 17–22.[1] Upon review of that opinion, the relevant statutory and case law, and the certified record, we discern no abuse of the juvenile court's discretion. E.T. came before the juvenile court in this matter with four open delinquency cases. After release from placements in a boot camp, an unsecure residential facility, and his home, E.T. repeatedly violated his

---

[1] Given its length, we shall not reproduce this portion of the juvenile court's opinion in this memorandum.

probation. Aware of and having thoroughly considered E.T.'s delinquency history and the nature of his offenses, his individual circumstances, and the goals of the juvenile system, we agree with the juvenile court that it ordered a placement "consistent with the protection of the public interest[,] . . . best suited to E.T.'s treatment, supervision, rehabilitation and welfare," which provides "balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable [E.T.] to become a responsible and productive member of the community." 42 Pa.C.S. § 6352(a). Juvenile Court Opinion, 3/23/15, at 17. Notably, E.T. did not object to the dispositional order committing him to Glen Mills Schools, which was based on the juvenile court's findings that "it was contrary to the welfare of [E.T.] to remain in the home of his mother, that reasonable efforts were made to prevent removal of [E.T.] from his home, and that placement at Glen Mills Schools was the least restrictive placement." Juvenile Court Opinion, 3/23/15, at 23–24; Adjuicatory/Dispositional Hearing Order, 11/24/14, at 1. Thus, E.T.'s objection to his placement at Abraxas, also a residential facility, which is for the same reasons, appears disingenuous. Dispositional Review Order, 12/23/14, at 1; N.T., 12/19/14, at 9.

Additionally, as detailed in its Rule 1925(a) opinion, the juvenile court sufficiently conveyed its reasons for the placement to E.T. and his parents on the record. Juvenile Court Opinion, 3/23/15, at 22–25; N.T., 12/19/14,

at 10–11. Lastly, the juvenile court was aware of and considered the delay in E.T.'s placement caused by Glen Mills Schools rescinding its offer, the Monroe County Juvenile Probation Department's re-evaluation of the situation, E.T. being re-interviewed, and solicitation of a new offer of placement at the December 19, 2014 hearing. This review was sufficient for purposes of satisfying the six-month review requirement of 42 Pa.C.S. § 6353(a) and Pa.R.J.C.P. 610(A)(1). Juvenile Court Opinion, 3/23/15, at 25–27; N.T., 12/19/14, at 7-9. Consequently, E.T.'s assertion that the juvenile court violated his due process rights by failing to consider this delay in fashioning its disposition order is meritless.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2015