42 A.3d 348 (2012)
2012 PA Super 81
In re J.M., a Juvenile.
No. 1282 WDA 2011
Superior Court of Pennsylvania.
Submitted January 30, 2012.
Filed April 9, 2012.
*349 Daniel C. Bell, Public Defender, Clearfield, for appellant.
William A. Shaw, Jr., Assistant District Attorney, Clearfield, for Commonwealth, participating party.
BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and COLVILLE[*], JJ.
OPINION BY DONOHUE, J.:
J.M. appeals from the May 31, 2011 dispositional order, providing for ten days to one year of incarceration, which was entered following the revocation of J.M.'s probation. We are asked to consider whether a juvenile court may impose a term of incarceration on a person over the age of 18 years but under the age of 21 years for a violation of probation that was imposed as part of the disposition in a delinquency adjudication in juvenile court. Because we conclude that the language of the Juvenile Act[1] prohibits such a result, we vacate the dispositional order and remand to the juvenile court.
The record reveals that J.M. has a significant history in the juvenile justice system, having first been adjudicated delinquent in 2007 when he was 14 years old. Since that time, J.M. has appeared before the juvenile court for various offenses, including burglary and, most recently, unauthorized use of a motor vehicle. As a result of his serial adjudications, J.M. was placed in numerous residential juvenile facilities for varying lengths of time. He was most recently released from a juvenile facility on March 17, 2011, approximately one week following his 18th birthday.[2] At that time, he remained on probation under the supervision of the juvenile court.
While on probation, on April 18, 2011, J.M. and another individual stole $280 from the gymnasium locker room in the *350 DuBois High School. Consequently, J.M. was charged as an adult with theft and receiving stolen property. The juvenile court held a violation of probation hearing, at which time J.M. admitted violating the terms of his probation as a result of the April 18 incident. After recounting J.M.'s history in the juvenile system including numerous placements and the resulting monetary expense to Clearfield County because of these prior placements, the juvenile court ultimately entered a dispositional order providing that J.M. be incarcerated for ten days to one year in the Clearfield County jail.[3] Because it understood that J.M. intended to challenge its authority to incarcerate him in the adult facility, the juvenile court simultaneously stayed the order. Post-dispositional motions were filed and denied, and this timely appeal from the order of disposition followed.
J.M. asks whether the "Court of Common Pleas of Clearfield County had the authority to impose a period of incarceration under the Juvenile Act?" Appellant's Brief at 7. This issue challenges the authority of the juvenile court to impose the disposition in question; as such, it is a challenge to the legality of the disposition. In re S.A.S., 839 A.2d 1106, 1107 (Pa.Super. 2003). Accordingly, our standard of review for such a claim is plenary, and it is limited to determining whether the lower court committed an error of law. Commonwealth v. Leverette, 911 A.2d 998, 1001-02 (Pa.Super.2006).
J.M.'s argument on appeal is straightforward. He contends that the Juvenile Act prohibits the detention of children in adult facilities and that because he falls under the definition of a child pursuant to the Juvenile Act, the juvenile court erred by ordering his incarceration. Appellant's Brief at 10. For the following reasons, we agree.
Resolution of the question of whether J.M. qualifies as a child under the terms of the Juvenile Act and whether the Juvenile Act authorizes the incarceration of a child in an adult detention facility requires the interpretation of a statute. Statutory interpretation is a question of law, and our review, as an appellate court, is plenary. In re L.C., II, 900 A.2d 378, 380 (Pa.Super.2006). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A § 1921(a). "Given that the language of a statute is the best indication of the General Assembly's intentions, there is no need to look beyond the plain meaning of a statute when the words of it are explicit." Day v. Civil Serv. Comm'n of Borough of Carlisle, 593 Pa. 448, 457, 931 A.2d 646, 652 (2007).
When enacting the Juvenile Act, the Legislature directed that the statute be interpreted and construed to effectuate certain enumerated purposes including:
(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
*351 42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." In re B.T.C., 868 A.2d 1203, 1204 (Pa.Super.2005) (quoting In re J.C., 751 A.2d 1178, 1181 (Pa.Super.2000)). Section 6352 sets forth the exclusive dispositional alternatives available to a juvenile court to effectuate this legislative intent:
(a) General rule.If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:
(1) Any order authorized by section 6351 (relating to disposition of dependent child).
(2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in section 6363 (relating to ordering foreign supervision), under conditions and limitations the court prescribes.
(3) Committing the child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare.
(4) If the child is 12 years of age or older, committing the child to an institution operated by the Department of Public Welfare.
(5) Ordering payment by the child of reasonable amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child, including a contribution to a restitution fund. The president judge of the court of common pleas shall establish a restitution fund for the deposit of all contributions to the restitution fund which are received or collected. The president judge of the court of common pleas shall promulgate written guidelines for the administration of the fund. Disbursements from the fund shall be made, subject to the written guidelines and the limitations of this chapter, at the discretion of the president judge and used to reimburse crime victims for financial losses resulting from delinquent acts. For an order made under this subsection, the court shall retain jurisdiction until there has been full compliance with the order or until the delinquent child attains 21 years of age. Any restitution order which remains unpaid at the time the child attains 21 years of age shall continue to be collectible under section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties).
(6) An order of the terms of probation may include an appropriate fine considering the nature of the act committed or restitution not in excess of actual damages caused by the child which shall be paid from the earnings of the child received through participation in a constructive program of service or education acceptable *352 to the victim and the court whereby, during the course of such service, the child shall be paid not less than the minimum wage of this Commonwealth. In ordering such service, the court shall take into consideration the age, physical and mental capacity of the child and the service shall be designed to impress upon the child a sense of responsibility for the injuries caused to the person or property of another. The order of the court shall be limited in duration consistent with the limitations in section 6353 (relating to limitation on and change in place of commitment) and in the act of May 13, 1915 (P.L. 286, No. 177), known as the Child Labor Law. The court order shall specify the nature of the work, the number of hours to be spent performing the assigned tasks, and shall further specify that as part of a plan of treatment and rehabilitation that up to 75% of the earnings of the child be used for restitution in order to provide positive reinforcement for the work performed.
In selecting from the alternatives set forth in this section, the court shall follow the general principle that the disposition imposed should provide the means through which the provisions of this chapter are executed and enforced consistent with section 6301(b) (relating to purposes) and when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child.
(b) Limitation on place of commitment.A child shall not be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of adults convicted of a crime.
42 Pa.C.S.A. § 6352 (footnote omitted)(emphasis added).
As is clear from the plain language of this provision, placement in an adult correctional facility is not included among the enumerated options available to a juvenile court following an adjudication of delinquency, and § 6352(b) removes any doubt as to the propriety of committing a child to an adult penal institution by specifically prohibiting it.
Moreover, § 6327 addresses the facilities in which juveniles may be detained and provides, in relevant part, as follows:
(a) General rule.A child alleged to be delinquent may be detained only in:
(1) A licensed foster home or a home approved by the court.
(2) A facility operated by a licensed child welfare agency or one approved by the court.
(3) A detention home, camp, center or other facility for delinquent children which is under the direction or supervision of the court or other public authority or private agency, and is approved by the Department of Public Welfare.
(4) Any other suitable place or facility, designated or operated by the court and approved by the Department of Public Welfare.
Under no circumstances shall a child be detained in any facility with adults, or where the child is apt to be abused by other children.
42 Pa.C.S.A. § 6327(a) (emphasis added). Thus, sub-section (a) enumerates the acceptable places for detention of a delinquent child, and further specifically provides that "under no circumstances shall a child be detained in any facility with adults."
In view of these unambiguous provisions, it is clear that the Legislature intended *353 to prohibit the detention of a delinquent child in a facility used primarily for the detention of adults serving criminal sentences. Accordingly, a juvenile court may not place a child determined to be delinquent in an adult detention facility.
With regard to whether J.M. is a "child" as defined in the Juvenile Act, § 6302 provides:
The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section...
"Child." An individual who:
(1) is under the age of 18 years;
(2) is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years; or
(3) was adjudicated dependent before reaching the age of 18 years and who, while engaged in a course of instruction or treatment, requests the court to retain jurisdiction until the course has been completed, but in no event shall a child remain in a course of instruction or treatment past the age of 21 years.
42 Pa.C.S.A. § 6302.
While J.M. clearly does not fit the first or third definition of "child," he fits precisely within the second definition: prior to his 18th birthday, J.M. was adjudicated delinquent for the offense for which he was on probation and he recently turned 18 (and therefore was under 21 years of age) at the time the juvenile court revoked his probation.[4] As such, J.M. is a child pursuant to the Juvenile Act. Thus, under the unambiguous language of the Juvenile Act, the juvenile court was prohibited from ordering J.M. to serve a term of incarceration in the Clearfield County Jail.
The juvenile court does not dispute that the Juvenile Act prohibits the commitment or detainment of a delinquent child in an adult correctional facility, or that J.M. fits the Juvenile Act's definition of "child." See Juvenile Court Opinion, 7/13/11, at 4. Rather, it focuses on J.M.'s age at the time he violated his juvenile probation and sets forth its belief that "the age ... at the time of [a] probation violation should be the determining factor as to whether [one] is treated as a child under the Juvenile Act or as a young adult subject to imprisonment." Id. at 5. The juvenile court posits that the application of § 6352 and § 6327 to persons over 18 but under 21 years of age "defies not just common sense but also does nothing to further the purpose of the Juvenile Act[.]" Id. at 4.[5]
*354 In response to the juvenile court's analysis, we reiterate that the words of the Juvenile Act are clear: a person under 21 years of age who was adjudicated delinquent before his or her 18th birthday qualifies as a child under the Juvenile Act. As such, incarceration is prohibited pursuant to § 6327 and § 6352 of the Juvenile Act. We must give effect to the plain, unambiguous language as written by our Legislature. See Day, 593 Pa. at 457, 931 A.2d at 652. "When the words of a statute are plain and unambiguous the rules of statutory construction do not permit courts to ignore the plain meaning of the words in a supposed pursuit of either its spirit or an unstated legislative intent." Hutchison ex rel. Hutchison v. Luddy, 946 A.2d 744, 752 (Pa.Super.2008) (citing Nationwide Mut. Ins. Co. v. Wickett, 563 Pa. 595, 604, 763 A.2d 813, 818 (2000)). Thus, the juvenile court's belief that application of § 6327 and § 6352 to persons that fit this particular definition of child does not further the purpose of the Juvenile Act is of no matter. It is bound, as are we, to interpret and apply the statute according to its plain meaning.
The juvenile court candidly admitted that historically, on occasion, it imposed short periods of incarceration in adult facilities as part of a dispositional order when it felt it was necessary, and that doing so had long been the practice in Clearfield County. N.T., 5/19/11, at 9. The juvenile court also shared the results of informal surveys conducted by its law clerk and its juvenile probation department, recounting that certain counties followed Clearfield County's practice and similarly included minimal periods of incarceration in dispositional orders, while others did not, although the number of counties that include incarceration among their arsenal for juvenile dispositions appears to be in the minority. Id. at 11-14. The juvenile court also related its perspective that some disagreement exists between the juvenile bench at large and the Juvenile Court Judges' Commission[6] as to whether juvenile courts are permitted to impose such dispositions, acknowledging at one point that "[the Commission says] it's not legal, but they can't show us any law. We say it is legal, but we can't show them any law." N.T., 5/19/11, at 9. In short, throughout the revocation hearing, the juvenile court expressed its opinion that the legality of this practice was an unsettled question. We recognize that the juvenile *355 court utilized these short periods of incarceration sparingly and that when it did so, it genuinely believed that it was acting in the best interest of the juvenile.[7] However, for the foregoing reasons we hold that pursuant to the unequivocal dictates of the Juvenile Act, a person over 18 years of age but under 21 years of age who violates probation imposed for an offense committed prior to his or her 18th birthday cannot be incarcerated in an adult facility for the probation violation.
Order vacated. Case remanded. Jurisdiction relinquished.
NOTES
[*] Retired Senior Judge assigned to the Superior Court.
[1] 42 Pa.C.S.A. § 6301, et seq.
[2] J.M. was born on March 8, 1993.
[3] The juvenile court initially entered an order providing for a flat term of incarceration of ten days. It subsequently amended that order to include both a minimum and maximum term of incarceration. See Juvenile Court Order, 5/19/11; Juvenile Court Order, 5/31/11.
[4] Indeed, it is only in the context of a revocation of probation or a review of a dispositional order that a juvenile court would exercise jurisdiction over an individual who fits the subsection (2) definition of "child" set forth in 42 Pa.C.S.A. § 6302. The "act of delinquency" referenced in this definition must refer to an act that occurred prior to the person's 18th birthday. Otherwise, the "act" would have led not to delinquency proceedings, but to criminal charges as an adult. The subsection (2) definition of a child contained in § 6302 creates a symmetry between the consequences of a violation of probation in the juvenile justice system and the criminal justice system. When a violation of probation occurs and a probationary sentence is revoked for an adult in the criminal justice system, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.A. § 9771(b). By defining a child as a person under the age of 21 years who committed an act of delinquency before reaching the age of 18 years, the dispositional alternatives available to the juvenile court when a child, so defined, violates probation, are the same as the alternatives that were available to it at the time of the initial disposition.
[5] In support of its rationale, the juvenile court points to Pennsylvania Rule of Criminal Procedure 456, which governs the remedies for default in payment of fines, restitution and costs in summary offenses. Trial Court Opinion, 7/13/11, at 5-6. The juvenile court draws our attention to the Comment to this Rule, which provides that if the defendant is over 18 at the time of default, he may be incarcerated even if he committed the offense when he was a juvenile. Id. at 5.

This result occurs because, as a general proposition, a summary offense is not an act of delinquency under the Juvenile Act. 42 Pa. S.C.A. § 6302. Thus, an individual who is under the age of 18 and convicted of a summary offense has not been adjudicated delinquent. In the event of a default in the payment of fines, restitution and costs by such individual after reaching 18 years of age, he or she does not fit the definition of a child pursuant to § 6302(2) because he or she did not commit an act of delinquency before reaching the age of 18 years. See id. and discussion at pp. 352-53, supra. Thus, the result noted by the juvenile court in the case at bar has nothing to do with the age of the individual (between 18 and 21 years) but because of the Legislature's determination that juveniles who commit summary offenses are not generally subject to the coverage of the Juvenile Act.
[6] The Juvenile Court Judges' Commission was established by the Pennsylvania Legislature in 1959. This Commission is responsible for, inter alia, advising juvenile courts about the proper care and maintenance of delinquent and dependent children and establishing standards governing the administrative practices and judicial procedures used in juvenile courts. See Juvenile Court Judges' Commission website, http://www.jcjc.state.pa.us.
[7] Both J.M. and his mother indicated at the revocation hearing that a short period of incarceration would be beneficial for J.M. N.T., 5/19/11, at 10, 18. The juvenile court also expressed its view that imposing a period of incarceration as part of a juvenile disposition allows the history to be sealed while incarceration as a sentence in the criminal justice system will follow the individual for life as part of his or her criminal history. Juvenile Court Opinion, 7/14/11, at 8. The juvenile court is apparently overlooking the fact that, in the case at bar, J.M. has been charged as an adult for the theft at DuBois High School, N.T., 5/19/11, at 3, and will therefore be treated as an adult on those charges. The incarceration ordered by the juvenile court was because of the violation of probation, not the criminal charge itself.