J-A27032-25                    2026 PA Super 38

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G.-B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.G.-B., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1592 EDA 2025 |

Appeal from the Dispositional Order Entered April 16, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0000424-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G.-B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.G.-B., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1593 EDA 2025 |

Appeal from the Dispositional Order Entered April 16, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0000504-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G.-B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.G.-B., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1594 EDA 2025 |

Appeal from the Dispositional Order Entered April 16, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0000570-2024

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

OPINION BY BECK, J.:                    **FILED FEBRUARY 27, 2026**

K.G.-B. appeals from the orders entered by the Philadelphia County Court of Common Pleas ("juvenile court") revoking his probation and committing him to the Commonwealth's custody. After careful review, we agree that the Commonwealth failed to provide him notice of the violations alleged to revoke his probation or disclose the evidence in support of the violations, both of which are constitutionally required. We therefore reverse.

The record reflects that on March 16, 2024, the Commonwealth filed a petition to adjudicate K.G.-B. delinquent alleging his commission of an attempted car theft and threatening another with violence. *See* Delinquency Petition, 3/16/2024 ("First Petition"). The Commonwealth charged him with numerous acts that would constitute crimes if committed by an adult. *Id.* K.G.-B. had been arrested as a result of his conduct and was being held in secure detention at the Philadelphia Juvenile Justice Services Center ("JJSC"). At a pre-adjudication hearing held on March 18, 2024, the juvenile court ordered him to be released on GPS with house restrictions and entry into the Intensive Supervision Program ("ISP"). Juvenile Court Order, 3/18/2024.

K.G.-B.'s adjudicatory hearing was continued several times thereafter. In the interim, he was arrested and charged by the Commonwealth with several theft-related crimes. *See* Delinquency Petition, 4/10/2024 ("Second Petition"). He was again detained at the JJSC for this conduct. On April 11, 2024, the juvenile court held a combined adjudicatory hearing on the First Petition and pre-adjudicatory hearing on the Second Petition, following which it allowed K.G.-B. to again be released on GPS with house restrictions and

reenrolled in ISP, also with house restrictions. Juvenile Court Order, 4/11/2024. The court additionally ordered a competency hearing and scheduled a status hearing for May 16, 2024. *Id.* The court did not adjudicate K.G.-B. delinquent on either petition at that time.

The Commonwealth filed a third petition for delinquency against K.G.-B. based upon his alleged commission of numerous assault-related crimes on April 19, 2024. *See* Delinquency Petition, 4/19/2024 ("Third Petition"). There are no substantive orders contained in the record concerning the Third Petition until October 22, 2024.[1] In the order entered on June 17, 2024, on the Second Petition, the juvenile court continued to require house restrictions as to both GPS and ISP, and further ordered "1st violation hold" as it related to GPS. Juvenile Court Order, 6/17/2024. On July 17, the juvenile court lifted the house restrictions previously ordered and instituted an 8:00 p.m. curfew. Juvenile Court Order, 7/17/2024. He remained on GPS monitoring and ISP.

On October 22, 2024, following what appears to have been a trial on the Third Petition,[2] the juvenile court found only the allegations as to simple

_____

[1] There were several orders entered continuing the adjudicatory hearing on the Third Petition. Notably, the July 18, 2024 order states that K.G.-B. was "found not competent as of 6/10/2024." Juvenile Court Order, 7/18/2024. In a subsequent order, however, the juvenile court stated that "Juvenile is competent." Juvenile Court Order, 9/19/2024. The record contains no information concerning these findings, nor does a June 10, 2024 order appear on any of the three dockets or in the certified record before this Court. K.G.-B.'s competence is not an issue pending before this Court, though, and we therefore do not need to consider this further.

[2] No transcript of this proceeding appears in the record.

assault to be substantiated and dismissed the remaining charges. Juvenile Court Order, 10/22/2024. It deferred its determination regarding whether to adjudicate K.G.-B. delinquent. *Id.* On October 28, 2024, K.G.-B. tendered admissions to two counts of criminal mischief alleged in the First and Second Petitions, and the remaining charges were withdrawn. Juvenile Court Order, 10/28/2024, at 1. The court deferred adjudication as to these Petitions as well, ordering that K.G.-B. would be adjudicated delinquent upon his "[f]irst violation." *Id.* at 2. He remained on ISP and GPS monitoring with an 8:00 p.m. curfew.

K.G.-B. was placed on "[i]nterim [p]robation" for all three Petitions with more than a dozen substantially similar conditions listed in each order. In the months that followed, it appears K.G.-B. was not compliant with the terms and conditions of his probation.[3] The December 9, 2024 order states that he was violating his curfew, had not been charging his GPS monitor as needed (allowing it to go into "critical battery mode"), and needed to "[m]easurably improve attendance/performance/behavior" in school. *See* Juvenile Court Order, 12/9/2024, at 1. The court nonetheless allowed K.G.-B. to remain on interim probation, again stating a "first violation" will result in his adjudication of delinquency.

On January 10, 2025, the Commonwealth, through Probation Officer ("PO") Erica Brown, filed a motion to revoke K.G.-B.'s probation on all three

---

[3] Again, the transcripts of these hearings are not contained in the certified record before this Court.

dockets alleging a GPS violation and that he left his house without the knowledge or permission of his mother ("Mother"). Motion for Amendment or Review of Delinquent Order, 1/10/2025, at 2. PO Brown requested that the juvenile court discharge K.G.-B. from GPS, hold him at the JJSC, and issue a bench warrant if he failed to appear. *Id.* The juvenile court granted the requested relief on January 10, 2025, continued him on interim probation, and deferred adjudication to the January 17, 2025 hearing.

The juvenile court adjudicated K.G.-B. delinquent at the January 17, 2025 hearing on all three Petitions. It deferred disposition while awaiting a behavioral health evaluation, with K.G.-B. remaining in the JJSC.

The court held the disposition hearing on February 18, 2025. It placed K.G.-B. on probation and ordered his release from the JJSC, placing him on in-home detention with GPS monitoring. Juvenile Court Order, 2/18/2025, at 1. It ordered his compliance with numerous listed conditions of probation, the rules of his parents' home, his individualized education plan, and stated that his first violation of probation would result in a "hold." *Id.* at 2 (capitalization omitted). It scheduled a review hearing for March 18, 2025.

On March 11, 2025, however, the Commonwealth, through PO Elizabeth Griffin, filed a motion to revoke K.G.-B.'s probation on all three dockets alleging GPS violations that occurred March 7-9, 2025. Motion for Amendment or Review of Delinquent Order, 3/11/2025, at 2 (unnecessary capitalization omitted). PO Griffin requested that K.G.-B. be discharged from GPS and held at the JJSC. *Id.*

The court held a hearing on the Commonwealth's motion during the scheduled review hearing on March 18, 2025. K.G.-B. failed to appear, resulting in the issuance of a bench warrant for his arrest. Juvenile Court Order, 3/18/2025. The court ordered him discharged from GPS and home detention and for him to be held once apprehended. *Id.* K.G.-B. was arrested on the bench warrant the same day and ordered to remain in the JJSC following a detention hearing that occurred on March 20, 2025.

On March 28, 2025, the juvenile court held what all parties understood to be a "review hearing." *See* N.T., 3/28/2025, at 6; *see also* Notice of Review Hearing, 3/20/2025. In fact, as PO Murtagh responded to the juvenile court's request for recommendations with information about K.G.-B.'s "two rejections from Adelphi [sic] and Abraxas," defense counsel interjected, seeking clarification. N.T., 3/28/2025, at 6. Defense counsel stated: "I'm a little bit confused because at this point[,] we haven't had a hearing about revocation of probation. So, I recognize that it's the probation officer to plan but it sounds like Your Honor is saying he's no longer allowed to be on probation." *Id.* The juvenile court responded, "Well, that's the plan," stating that this was to be "both a hearing for on [sic] probation and the plan is whether he's going to stay in the community, go back to the community or be placed out of the home and any other type of service." *Id.* at 6-7. Defense counsel then asserted that if the court was going to hold a hearing seeking to revoke K.G.-B.'s probation, he is entitled to due process and "that any hearsay is not admissible at this hearing." *Id.* at 8-9 (orally citing on the record *In re*

- 6 -

*Davis*, 546 A.2d 1149 (Pa. Super. 1988), and Pa.R.J.C.P. 612). The trial court expressed concern as to how PO Murtagh was "expect[ed] [] to do a review hearing" without hearsay evidence and overruled defense counsel's objection. *Id.* at 9-10.

During the March 28 proceeding, the juvenile court heard from PO Murtagh, the prosecutor, and Mother that K.G.-B. is facing new allegations of delinquency, left the house without permission, and was reportedly missing school and ultimately suspended from school for bullying and/or harassing and/or fighting with classmates—the school information was entirely unclear, as Mother had received "three different calls" and "three different stories" from the school. *Id.* at 11-13. None of this information was communicated through sworn testimony or by anyone with firsthand knowledge of what occurred (other than Mother stating that K.G.-B. left home without her permission). Defense counsel reiterated his hearsay objection, to which the juvenile court responded, "Under your conditions, … you will never be able to conduct a review hearing for this young man. And he's having a hearing because [sic] opportunity to be heard and a fair tribunal and he's present." *Id.* at 15. When defense counsel reminded the trial court that "due process requires that hearsay not be the basis for his revocation," the juvenile court again denied that it was a revocation hearing. *Id.* (Juvenile court stating, "The problem is you keep saying that but I haven't revoked anything. The [c]ourt is entitled to hear what is going on.").

The juvenile court ultimately continued the hearing to April 16, 2025, ordering that K.G.-B. remain on probation and for PO Murtagh to plan for possible placement. *Id.* at 16 (juvenile court requesting that PO Murtagh "relook and find out what it is" and stating, "we'll give you a date to come back," confirming "[t]he 16th" with counsel for K.G.-B.). Following the March 28 hearing, the juvenile court issued an order stating that, "after conducting a [d]ispositional [r]eview [h]earing" K.G.-B. was to "remain on probation" and in the JJSC. Juvenile Court Order, 3/28/2025, at 1.

On April 16, 2025, the hearing opened with the assistant district attorney reminding the juvenile court that K.G.-B. had an "open matter … listed on 5/1" in another courtroom and "noting the numerous GPS violations." N.T., 4/16/2025, at 6. The juvenile court then called upon PO Murtagh to make his presentation, who stated he had "an extensive report here," and defense counsel renewed his continuing objection to hearsay evidence. *Id.* The juvenile court responded that "[t]he Juvenile Act … allows the juvenile court to take hearsay." *Id.* at 11 (cleaned up). It went on to list the duties of a PO, which includes "make investigations, reports and recommendations to the court[, to include] written reports or verbal reports." *Id.*

The court then allowed PO Murtagh to testify regarding oral and written communications he had received from K.G.-B.'s school regarding his suspension "for harassment of other students [that] then became a physical altercation," his failure to regularly attend school, his failing grades, an odor of marijuana on his person when he did attend school, and bringing drugs to

- 8 -

school.  *Id.* at 13-16, 18.  At one point, PO Murtagh read aloud the school principal's report of a March 10, 2025 physical altercation that occurred at school, describing what occurred in detail, and included a report to the principal from the other student involved, as well as other infractions K.G.-B. allegedly committed at school.  *Id.* at 17-18.  PO Murtagh additionally testified as to K.G.-B.'s "history of violence dat[ing] back to October of 2024," when he engaged in "two attacks outside of school on a homeless man and another man on a SEPTA bus," which were reportedly captured on video.  *Id.* at 14-15, 18.  He briefly mentioned that K.G.-B. "violated his house restrictions at least three times," but presented no report or other evidence concerning the violations.  *Id.* at 16.  He further acknowledged that Mother informed him that "someone is lying and the GPS report is not accurate." *Id.* at 15.

In addition to repeated hearsay objections, defense counsel objected based upon the Commonwealth's failure to provide the videos of the alleged attacks or the four school reports detailing the above testimony provided by PO Murtagh, the hearsay nature and authenticity of the school reports, and the failure of the Commonwealth to make the GPS PO or any school official available for cross-examination.  *Id.* at 15 (as to the videos, defense counsel stating, "I have not seen those videos[, … t]hey have not been provided to defense counsel"), 20 (regarding the school reports, defense counsel

objected, stating "I have not seen them"),[4] 23-24 (asserting that information testified to by PO Murtagh, who is not the GPS PO, regarding the information generated by the GPS report is hearsay; same for the information testified to from school reports and arguing those reports are not self-authenticating). The juvenile court overruled each of defense counsel's objections.

Following PO Murtagh's testimony, the Commonwealth requested that K.G.-B. be held at JJSC pending placement options becoming available. *Id.* at 22; *see also id.* at 23 (district attorney "requesting to commit to state"). K.G.-B. sought to be re-released to Mother's home on GPS monitoring with online school. *Id.* at 24-25.

The juvenile court granted the Commonwealth's request and committed him to the state, scheduling a review hearing for May 5, 2025. K.G.-B.'s post-dispositional motions were denied by operation of law. He thereafter filed a separate, timely notice of appeal at each docket and filed a court-ordered Rule 1925 concise statement. He presents two issues for our review:

> [1]. The [juvenile] court erred in revoking K.G.-B.'s probation and placing him in a secure facility where he did not receive notice of the nature of the hearing and allegations against him, in violation of his constitutional due process rights and the Rules of Juvenile Court Procedure.
>
> * * *
>
> [2]. The [juvenile] court erred where it revoked K.G.-B.'s probation based solely on hearsay evidence.

---

[4] PO Murtagh acknowledged that the school reports were not provided to defense counsel, as he responded to the objection by stating, "That's why I brought them." N.T., 4/16/2025, at 20.

K.G.-B.'s Brief at 13, 19 (cleaned up).[5]

K.G.-B.'s first issue alleges that his due process rights were violated because the juvenile court revoked his probation without notice that the hearing in question was a revocation hearing, the bases for revocation, or disclosure of the evidence in support of revocation prior to the hearing. Although he recognizes that a court is required to conduct "routine dispositional review hearings under Rule [of Juvenile Court Procedure] 610(A)" while a juvenile is on probation, he asserts that "a revocation of probation hearing is distinct and requires the party requesting revocation to file a motion and serve notice upon the parties" pursuant to Rule 612. *Id.* at 13. According to K.G.-B., the "notice" to which a juvenile is entitled for a revocation hearing includes "written notice of the claimed violations" and "disclosure … of [the] evidence against him." *Id.* at 14 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In his view, the juvenile court ignored the difference between review and revocation hearings and, in particular, the different constitutional protections attendant thereto. *Id.* at 18-19.

K.G.-B. contends that the juvenile court addressed the March 11, 2025 motion seeking to revoke his probation at the March 28, 2025 hearing by

---

[5] In the statement of questions involved portion of his brief, K.G.-B. reproduced the four points of error and nine subpoints raised in his concise statement. However, he stated that these points "have been consolidated for convenience in the Argument section," and we thus quote the versions listed in the corresponding argument sections. K.G.-B.'s Brief at 2.

denying the request and ruling that K.G.-B. would remain on probation pending the outcome of the separate delinquency matter. *Id.* at 15-16 & n.6. He states

> there is no indication in the order or made on the record at that initial hearing suggesting that the [March 28] hearing was bifurcated or continued, or that the trial court held the matter under advisement. Additionally, continuing the hearing on this motion beyond ten days [to April 16], without the express consent of K.G.-B., would be a violation of Pa.R.J.C.P. 612(B)(1), which requires revocation hearing be held within ten days when the juvenile is detained.

*Id.* at 16 n.6. He goes on to argue, in the alternative, that "even if the prior motion had remained pending, this motion contained only allegations relating to K.G.-B.'s GPS monitoring and did not include school-based behavior or attendance as potential grounds for revocation; accordingly, evidence related to these un-noticed allegations should not have been permitted during a hearing on the [revocation m]otion." *Id.* The absence of this notice was a violation of his due process rights and interfered with his ability to prepare a defense. *Id.* at 16-17. Additionally, the Commonwealth failed to provide the evidence upon which it relied at the hearing to revoke his probation, which likewise constitutes a violation of his due process rights. *Id.* at 17 (citing *Morrissey*, 408 U.S. at 488–89).

The juvenile court states that the March 28, 2025 hearing was "a review of probation hearing[.]" Juvenile Court Opinion, 8/25/2025, at 10. PO Murtagh "testified that the reason he could not make recommendations was because [K.G.-B.] was arrested on new charges[.]" *Id.* Thus, the court

- 12 -

"continued the review hearing to April 16, 2025." *Id.* at 12. Responding to K.G.-B.'s claim he lacked notice, the juvenile court concluded:

> It is well established that due process requires notice and the opportunity to be heard in front of a neutral decision-maker. [K.G.-B.] was afforded due process at every step of these proceedings. In the instant case, [K.G.-B.] was present in the courtroom and represented by counsel, and there was no issue on record regarding the impartiality of the [c]ourt. [K.G.-B.] and his attorney were informed of every proceeding either at the bar of the court or through electronic service, almost always through both. [K.G.-B.] had the opportunity to be heard at each proceeding, whether it was [K.G.-B.]'s personal testimony or representation of the same through his attorney.

*Id.* at 19.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is de novo and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa. Super. 2017).

"It is clear that as to commitment of delinquent[ children], the juvenile justice system operates in a manner wholly different from the criminal justice system." *In re M.D.*, 839 A.2d 1116, 1119 (Pa. Super. 2003). One clear difference is the juvenile system's analog to a criminal judgment of sentence, the dispositional order.

> The juvenile's disposition ... is subject to frequent, mandatory review by the hearing court. The Juvenile Act sets out the broad range of possibilities afforded the judge at disposition, which include probation "under conditions and limitations the court prescribes," commitment to an institution, youth center or camp, and the imposition of fines, costs and restitution. 42 Pa.C.S.[] § 6352.

- 13 -

***M.D.***, 839 A.2d at 1119. Section 6352 "sets forth the exclusive dispositional alternatives available to a juvenile court." ***In re J.M.***, 42 A.3d 348, 351 (Pa. Super. 2012). The statute does not, however, address revocation or modification of existing dispositional orders. Instead, the ongoing duty and authority to supervise the juvenile subsumes authority to revoke or modify the dispositional order. ***See In Interest of M.M.***, 690 A.2d 175, 177 (Pa. 1997) ("The Juvenile Act expressly provides that placement of a juvenile on probation subjects the juvenile to ongoing court supervision and conditions. Therefore, by its very nature, any sentence of probation is 'temporary,' and a trial court's characterization of a probation order as 'temporary' constitutes mere surplusage.") (citation omitted).

The United States Supreme Court has established constitutional due process requirements for probation revocation with respect to adult offenders. In ***Morrissey v. Brewer***, the High Court held, in the context of parole, that parolees have an interest in their continued liberty. ***Morrissey***, 408 U.S. at 481. This liberty interest, "although indeterminate," does not permit a State to "revok[e] parole without some informal procedural guarantees." ***Id.*** at 483.

> The Court explained that revocation occurs over two steps:
>
> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does

the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

*Id.* at 479–80. The ***Morrissey*** Court further decided "the minimum requirements of due process" applicable to these two stages. *Id.* at 488-89. Among these, of relevance here, is "written notice of the claimed violations of parole[, …] disclosure to the parolee of evidence against him[, … and] the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)[.]" *Id.* at 489.

In ***Gagnon v. Scarpelli***, the Court extended these protections to adult offenders facing probation revocation. ***Gagnon v. Scarpelli***, 411 U.S. 778, 791 (1973). Thus, a probationer is likewise entitled to the two-stage revocation process, with due process protections that include, inter alia, written notice of the claimed violations of probation, disclosure of the evidence to be presented, and the right to confront the witnesses against the probationer. *Id.* at 786-87.

This Court has held that ***Gagnon*** rights apply in the juvenile setting, as it constitutes an adjudicatory proceeding. ***See In Interest of Davis***, 546 A.2d 1149, 1153 (Pa. Super. 1988) (en banc), *aff'd sub nom* ***Commonwealth***

*v. Davis*, 586 A.2d 914 (Pa. 1991) (plurality).[6]  In *Davis*, the court revoked a juvenile's probationary status based solely on an officer's testimony relating hearsay from the juvenile's father.  *In Interest of Davis*, 546 A.2d at 1150.  We quoted language from *Morrisey*, recognizing the need to ensure probation is not revoked "because of erroneous information or because of an erroneous evaluation of the need to revoke … given the breach of conditions."  *Id.* at 1153 (quoting *Morrissey*, 408 U.S. at 484).  We held: "In view of the substantial liberty interests which exist in not having probation revoked on the basis of unverified facts or erroneous information, we conclude that due process considerations entailing the right to confront and cross-examine an accuser must extend to probation revocation proceedings for a juvenile."  *Id.*[7]

_____

[6]  The United States Supreme Court has not addressed whether *Morrissey* and *Gagnon* extend beyond adjudicatory proceedings in juvenile matters.  In *Application of Gault*, the United States Supreme Court held that the Due Process Clause applies to the adjudicatory phase in delinquency matters, but declined to address "the procedures or constitutional rights applicable to … the post-adjudicative or dispositional process."  *Application of Gault*, 387 U.S. 1, 13 (1967); *see also Davis*, 586 A.2d at 915 (opinion in support of affirmance stating that the question of whether hearsay evidence can be the basis for revoking a juvenile's probation depended upon "whether to treat the probation revocation as adjudicatory or dispositional").

[7]  Curiously, the juvenile court—both at the hearing below and in its 1925(a) opinion—chastised counsel for K.G.-B. for his reliance on *Davis*, believing that it lacks precedential value, and seemingly overruled his hearsay objections on that basis.  *See* N.T., 4/16/2025, at 8-9; Juvenile Court Opinion, 8/25/2025, at 20.  The juvenile court based its view on the fact that the Supreme Court granted allowance of appeal, following which it issued a plurality decision without the support of the Court's majority.  *Id.*  While the court is correct that a plurality decision of the Supreme Court is not precedential, this simply
*(Footnote Continued Next Page)*

Further, our Supreme Court, via its rule-making authority, has provided due process protections in the context of the revocation of a juvenile's probation. Rule 612 of the Rules of Juvenile Court Procedure provides that any "motion to modify or revoke probation" be "filed in accordance with Rule 345." Pa.R.J.C.P. 612(A). If the dispositional order is modified, "the court shall state the grounds for the modification and shall issue a new dispositional order in accordance with Rule 515." *Id.* 612(C). The comment to Rule 612 expressly states: "A juvenile should be afforded due process before probation can be revoked. *Cf. Gagnon* ...; *Morrissey*[.]". *Id.*, cmt. Further, our rules expressly recognize a difference between the procedural requirements for a review hearing and a revocation hearing. *See* Pa.Rs.J.C.P. 610(B), 612.

The *Davis* Court did not consider whether due process requires the same notice to be provided to juvenile facing revocation of probation as *Gagnon* provides to adult probationers. We recognize that "[d]ue process is a flexible concept which 'varies with the particular situation.'" *Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

> Ascertaining what process is due entails a balancing of three considerations: (1) the private interest affected by the

_____

means that our en banc decision remains binding precedent on this panel and all lower courts. *See, e.g., Commonwealth v. Orr*, 255 A.3d 589, 596 (Pa. Super. 2021) (applying Superior Court decision affirmed by equally divided court as binding precedent; "[d]ue to the lack of a majority opinion, the Supreme Court's decision … is not binding upon us"). Our en banc decision in *Davis* remains good law.

- 17 -

governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state.

**Id.** Applying these precepts to the question of whether **Gagnon**'s notice requirements should apply in the juvenile context, we conclude that they do.

Regarding the first consideration, the juvenile's interest in the governmental action is perhaps even stronger than in the adult criminal context. "While at least one of the purposes of the criminal justice system is to punish individuals who fail to obey the law, the purpose of juvenile proceedings, on the other hand, is to seek treatment, reformation and rehabilitation, and not to punish." **Matter of Huff**, 582 A.2d 1093, 1098–99 (Pa. Super. 1990) (quotation marks and citation omitted). The General Assembly has stated that to achieve the aims of the Juvenile Act, courts may "separat[e] the child from parents only when necessary for his welfare, safety or health or in the interests of public safety," and must "us[e] the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child[.]" 42 Pa.C.S. § 6301(b)(3)(i). This is an express recognition of the juvenile's liberty interest in remaining in the community and with his or her family. **See also Interest of Davis**, 546 A.2d at 1153 ("A juvenile has the same substantial interest in retaining his liberty as an adult").

Turning to the second consideration, written notice of the alleged violations and disclosure of the evidence to be presented helps ensure that the juvenile court has the best information available before depriving the juvenile of his or her liberty. In the adult revocation context, we have explained that a written notice of alleged violations and the disclosure of evidence to be presented in support ensures that the "probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that parole or probation is no longer an effective rehabilitative tool and should be revoked." *Commonwealth v. Perry*, 385 A.2d 518, 520 (Pa. Super. 1978). This concept applies equally in the juvenile context. Moreover, providing written notice of the alleged violations lessens the risk of an erroneous deprivation and promotes the General Assembly's purpose of keeping family units intact. *See* 42 Pa.C.S. § 6301(b)(1), (3).

Finally, the additional burdens are none. Rule 612 states that motions to revoke probation shall be filed under Rule 345, which, among other requirements, states motions are to "be filed with the clerk of courts," *id.* 345(A)(1), with service on the other party. *Id.* 345(B)(1). Rule 344 expressly requires all motions to "state with particularity the grounds for the motion, the facts that support each ground, and the types of relief or order requested." *Id.* 344(C)(2). Thus, when read in conjunction with the comment to Rule 612, due process dictates that the juvenile court could not revoke K.G.-B.'s

probation unless the Commonwealth filed and served a written motion alleging "with particularity" the basis of its request for revocation.

We conclude that pursuant the rationale of **Davis**, viewed along with the text of, and comments to, the Rules of Juvenile Court Procedure, due process requires that a juvenile receive written notice that the Commonwealth is seeking to revoke probation containing the violations alleged, and that the Commonwealth disclose the evidence in support thereof, before a juvenile court may revoke probation. It would be anomalous to hold that under **Davis**, a juvenile has a due process right of confrontation in juvenile revocation proceedings but not the more basic notice of the allegations against him or her and the disclosure of evidence to be presented in support thereof, particularly given our Supreme Court's clear statement that a juvenile should receive due process before the revocation of probation. **See** Pa.R.J.C.P. 612, cmt.; **see also Pennsylvania Coal Min. Ass'n v. Ins. Dep't**, 370 A.2d 685, 692 (Pa. 1977) ("Notice is the most basic requirement of due process.").

We begin our analysis of the case before us by quickly disposing of K.G.-B.'s claim that he was unaware that the revocation of his probation was to be considered at the April 16, 2025 hearing. This is baseless. As our detailed recitation of the proceedings above clearly shows, the April 16 proceeding was a continuation of the March 28 hearing, the latter of which K.G.-B. admits he knew to be a revocation hearing (despite the contrary statements on the record by both the Commonwealth and the juvenile court, as well as the

misnamed hearing notice provided to K.G.-B.[8]). **See** K.G.-B.'s Brief at 16 n.6.

Furthermore, the record reflects that counsel for K.G.-B. expressed no confusion at any point during the April 16 proceeding as to whether the juvenile court would be considering revoking K.G.-B.'s probation (as he did at the March 28 hearing). To the contrary, at the very beginning of the April 16 proceeding, counsel for K.G.-B. lodged a continuing objection to hearsay evidence, stating that his client "is entitled to the same rights of due process at this hearing as a violation probation hearing as adults." N.T., 4/16/2025, at 6. Regarding K.G.-B.'s claim that holding the continued hearing more than ten days after the filing of the motion to revoke probation violated Rule 612(B)(1) without his consent, the record plainly reflects that counsel agreed

_____

[8]     Perhaps this was a mistake as to the nomenclature used—a misunderstanding that there is a difference between a review hearing and a revocation hearing. **See generally** Juvenile Court Opinion, 8/25/2025, at 10-21 (repeatedly referring to the March 28 and April 16 hearings as "review hearings"). While it may be tempting to chalk this up to mere semantics, the terms at issue carry with them very different constitutional protections. As discussed hereinabove, a revocation hearing is an adjudicatory proceeding; hearsay cannot form the basis of the revocation decision and the juvenile is entitled to the heightened due process protections afforded to an adult defendant facing revocation of probation. **See supra**, pp.15-16 & n.6; Pa.R.J.C.P. 612 & cmt. A review hearing is dispositional and, as the juvenile court recognized, at such hearings, hearsay evidence is freely allowed within the discretion of the court. **See** Juvenile Court Opinion, 8/25/2025, at 20-21 (citing the responsibilities of a PO, as set forth in the Juvenile Act, and stating that "if the reports of the probation officers cannot be relied on, reviews of probation would be much more difficult, if not impossible, to conduct") (emphasis added) (citing 42 Pa.C.S. § 6304(a)); **see also** N.T., 3/28/2025 at 10 (the court stating that the March 28 hearing was not a revocation hearing and hearsay is admissible for purposes of a review hearing).

to that date. *See* K.G.-B.'s Brief at 16; N.T., 4/16/2025, at 16. This argument does not entitle him to relief.

We agree, however, that the notice and information provided to K.G.-B. in advance of the April 16, 2025 revocation hearing was constitutionally inadequate. The March 11 motion filed by the Commonwealth, through PO Griffin, identified three alleged GPS violations committed by K.G.-B. between March 7-9, 2025. The record of the April 16 hearing, however, reflects that these violations were barely mentioned and there was no substantive testimony presented about the alleged GPS violations (for example, no report pertaining to the violations, no information about when the violations occurred, no information as to where K.G.-B. was alleged to have been). *See* N.T., 4/16/2025, at 6, 16. Instead, the hearings were dedicated almost exclusively to allegations concerning K.G.-B.'s recent conduct and attendance at school and his behavior in the community that allegedly occurred five months prior to the Commonwealth sought to revoke his probation. *See* N.T., 4/16/2025, at 14, 18, 19. Written notice of these allegations appears nowhere in the record, *see Morrissey*, 408 U.S. at 489, and the record reflects that the juvenile court did rely upon these unnoticed allegations in its decision to revoke K.G.-B.'s probation. *See* Juvenile Court Opinion, 8/25/2025, at 18-19.

Nor does it appear that the Commonwealth disclosed the evidence upon which it relied in support of the allegations to K.G.-B. in advance of the

hearing. *See Morrissey*, 408 U.S. at 489. To the contrary, the record reflects that much of the testimony and evidence presented at the April 16 hearing came as a surprise to K.G.-B.'s counsel. PO Murtagh summarized a "history of violence dat[ing] back to October of 2024," N.T., 4/16/2025, at 14, and cited videos establishing that "[K.G.-B.] assaulted a homeless person" on October 9 and "crowded and threatened an unknown individual" on a bus on October 31. *Id.* at 18. Counsel for K.G.-B. objected, stating that those videos had not been provided to him by the Commonwealth. *Id.* at 15. PO Murtagh also testified extensively regarding reports that he received from several individuals at K.G.-B.'s school, detailing incidents that allegedly occurred on March 10 and 11, 2025. *See id.* at 13-16-18. Counsel for K.G.-B. again objected based upon lack of notice. *Id.* at 19; *see also* Motion for Reconsideration, 4/28/2025, at ¶¶ 38, 44.

While the juvenile court reasoned that K.G.-B. had "plenty of time … to prepare as this was the third hearing," Juvenile Court Opinion, 8/25/2025 at 17, it is not clear how K.G.-B. could anticipate that the Commonwealth would rely, in large part, on historical evidence of his behavior in the community or his attendance and conduct at school when only three GPS violations were identified in the March 11, 2025 motion seeking revocation of probation.[9] He

_____

[9] While it would not be a sufficient substitute for the written notice required of the allegations against him, we nonetheless observe that the statements made on the record at the March 28, 2025 hearing also did not inform K.G.-
*(Footnote Continued Next Page)*

had no notice of what the school officials stated about his conduct or performance and no reason to expect that the Commonwealth would rely on video evidence of his past acts of violence as he was not provided with written notice of these allegations or the evidence upon which the Commonwealth would rely in support thereof. Instead, K.G.-B. had to defend those allegations without the benefit of preparation or evidence to counter the Commonwealth's claims against him. We therefore conclude that the Commonwealth's failure to file and serve a written motion for revocation of probation identifying the bases for revocation and to disclose the evidence upon which it would rely to support those allegations, as required by *Gagnon* and the Rules of Juvenile Court Procedure, requires that we vacate the April 18 order. *See Commonwealth v. Stratton*, 344 A.2d 636, 638 (Pa. Super. 1975) (reversing and remanding for new revocation proceeding based upon failure of the Commonwealth to provide adult probationer with "written notice of the alleged probation violations" as required by *Gagnon*).

The Commonwealth argues that K.G.-B. waived his notice claim by failing to object. Commonwealth's Brief at 6 ("[K.G.-B. did not raise any objections during either of the two hearings regarding the alleged lack of

---

B. of what the school officials would say in their reports or suggest that the Commonwealth was going to present video evidence of his behavior in the community that allegedly occurred five months prior to the Commonwealth filing its motion to revoke his probation.

- 24 -

notice."). Regarding K.G.-B.'s assertions regarding the adequacy of the notice and disclosure of the evidence against him, we disagree. "In order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived." ***Commonwealth v. Russell***, 209 A.3d 419, 429 (Pa. Super. 2019); ***see also*** Pa.R.A.P. 302(a). As stated above, counsel for K.G.-B. objected at the April 16 hearing to lack of notice when PO Murtagh testified regarding the content of the videos and the school reports prior to the hearing. N.T., 4/16/2025, at 15, 20. Thus, there is no basis to find these claims were waived.

K.G.-B.'s second claim is that the juvenile court must be reversed based upon its reliance on hearsay to revoke his probation. ***See*** K.G.-B.'s Brief at 19-21. Because we conclude that the disposition order must be vacated for inadequate notice of the allegations and evidence supporting the revocation request, we need not address this claim.[10] If, on remand, the Commonwealth

_____

[10] We nonetheless observe, however, that in its evaluation of this claim, the juvenile court largely addresses whether PO Murtagh was able to authenticate the reports and evidence in question, not whether such evidence constituted hearsay. ***See id.*** (discussing Rule of Evidence 901 (related to authentication) and finding that "PO Murtagh had sufficient collective knowledge of the contents of the reports and their respective authors, in conjunction with his knowledge and involvement in [K.G.-B.'s] case, to authenticate the reports he relied on to make his recommendations to the Court," and that his "recommendations were based on his own independent investigation and supervision of [K.G.-B.], including but not limited to, communication with administration at [K.G.-B.'s] school"). Further, as noted above, the juvenile
*(Footnote Continued Next Page)*

opts to seek revocation, both it and the juvenile court must adhere to the framework detailed in this decision.

Order reserved. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026

---

court was of the view that our en banc decision in **Davis**, which prohibits the juvenile court from revoking K.G.-B.'s probation based solely on hearsay evidence, was not good law. **See supra**, note 7.